(No. 25548.—

Fannie Cohn Gilbert, Appellee, *vs.* Albert Cohn *et al.*
Appellants.

*Opinion filed October 11, 1940—Rehearing denied Dec. 4, 1940.*

Cameron Latter, and Samuel A. Maremont, for appellants.

Moses, Kennedy, Stein & Bachrach, (Hamilton Moses, Jr., of counsel,) for appellee.

Mr. Justice Stone delivered the opinion of the court:

The circuit court of Cook county decreed that appellee is entitled to an undivided 3/20 interest in certain real estate in the city of Chicago, the legal title to which, though held by defendant the Liberty National Bank, is impressed with a constructive trust for the benefit of appellee in 3/20 thereof. It was further decreed that appellee is entitled to partition, and, by reason of transfers made to and by other defendants, she is entitled to an accounting for rents, issues and profits. The issue in the case is whether such constructive trust exists. The evidence, which is conflicting, was heard by the master in chancery who made certain findings of fact which were sustained by the chancellor.

Herman Cohn, father of appellee and appellants, died intestate November 18, 1920, seized of certain real and personal property of the value of over $75,000. He was survived by his widow, Jennie Cohn, and eight children, three of whom were minors. A few days after his death it was suggested by some of the adult children that they convey to their mother, Jennie, their respective interests in their father's estate, thus assuring to her the position of head of the family. This was later agreed to by all of the adult children including appellee, who contended before the chancellor and master that this agreement was entered into, and the conveyances made, with the understanding that on the death of their mother each would receive his or her respective interest in the father's estate. Letters of administration were issued to Jessica Cohn Slatis, one of the defendants, who is an attorney at law, and Elizabeth Buchhalter, an attorney, was employed as attorney for the administratrix. One tract of real estate was sold by the administratrix to pay debts. Upon completion of the administration each of the adult heirs signed a receipt for his

distributive share of the father's personal estate and proceeds arising out of the sale of the tract of real estate, and at their direction the cash was delivered to their mother.

The conveyances were made to the mother on August 19 and 21, 1921, and involved property known as the Polk street property and the St. Louis avenue property. The deeds were signed by appellee and appellants Albert Cohn, Joseph Cohn, Abraham Cohn, since deceased, and his wife Mollie, and Jessica Cohn Slatis and her husband. No consideration was paid by Jennie Cohn for the conveyance to her of her children's interest, nor was any consideration given for the transfer of the cash remaining on the administration of the estate.

On April 7, 1922, Jennie Cohn, as guardian of Matthew, Jay and Bernard Cohn, with leave of the probate court, sold the minors' interest in the St. Louis avenue property to Joseph Cohn for the consideration of $7000, and, for a like sum, sold the minors' interest in the Polk street property to Joseph. On August 24, 1922, Jennie Cohn, the mother, and defendant Joseph Cohn, without consideration, conveyed by quitclaim deed the St. Louis avenue property and the Polk street property to defendant Albert Cohn, and Albert Cohn on September 19, 1922, without consideration, conveyed by quitclaim deed both of the aforesaid parcels of land to Jennie Cohn and Joseph Cohn as joint tenants, and not as tenants in common. When Matthew Cohn reached his majority Jennie Cohn, as his guardian, paid him his share of the proceeds in the real estate and he immediately turned the money received over to his brother Joseph. No consideration for the transaction appears. Jay, the second minor son, upon arrival at his majority, received his share of the estate and immediately turned it over to his mother. There was no consideration for this transfer. The share of Bernard, the third minor son, was used by his mother for his support and maintenance.

Some time after the death of Herman Cohn, Jennie Cohn sold and conveyed the St. Louis avenue property and other property, and invested the proceeds, together with certain personal property belonging to the estate, in real estate known in the record as the Douglas boulevard and Washington boulevard properties. Thereafter, Jennie Cohn and Joseph Cohn, without consideration, conveyed these Douglas boulevard and Washington boulevard properties and the West Polk street property, being the real estate then in the estate, to the Liberty National Bank of Chicago, as trustee, for the express benefit of Jessica Cohn Slatis. No consideration was paid by her. There is no evidence that appellee, plaintiff, had any knowledge of these transfers. She testified that she did not have knowledge thereof until her mother's death when she demanded her share. Jennie Cohn died intestate September 20, 1934, leaving her eight children her sole heirs-at-law and next of kin. No probate of her estate was had.

On April 8, 1937, appellee filed a complaint alleging that the consideration for the conveyance by her and her sister and brothers of their interest in their father's real estate to their mother, was that the mother agreed and promised that the real estate so conveyed and proceeds thereof, whatever they might be, should, on the death of the mother, descend to appellee and the defendants, and these conveyances were made in consideration of the faith and confidence reposed in Jennie Cohn, but that later, in breach of that agreement, Jennie Cohn conveyed away these properties as indicated here, without consideration. The complaint avers that these various conveyances by Jennie Cohn and other defendants, as herein described, were in fraud of appellee's rights, and as a result the title to the property is impressed with a trust. The complaint avers a demand by appellee for her distributive share and prays that defendants account for the income arising from these

properties. The bill of complaint also prays discovery of the transactions by Jennie Cohn of the property of Herman Cohn and discovery from the Liberty National Bank, as trustee of the property held by it, and for partition and for other equitable relief.

Appellants answered jointly and severally and denied the agreement averred by plaintiff, and averred that even though the agreement did exist, it is barred by the Statute of Frauds; denied the conveyances made by Jennie Cohn were without consideration and denied that appellee was entitled to any relief. A portion of appellants' answer pleading the Statute of Frauds was, on motion of appellee, stricken, and the ruling of the court in that behalf is listed among errors assigned here.

The master, to whom the cause was referred, found that at the time of his death Herman Cohn owned real estate and personal property of an aggregate value of over $77,000. He found that the evidence established the existence of the agreement averred by appellee and that the agreement was made at the suggestion of Jessica Slatis, a defendant. The master also found that all the adult children conveyed their interest in their father's estate to their mother; found that the evidence is clear that the joint agreement and the conveyances were made in further consideration of faith and confidence which Jennie Cohn's children reposed in her. He found, also, that there particularly existed between appellee and her mother, at the time of those transfers, a confidential relationship. He found, also, that Jennie Cohn assured appellee that she would receive her share of the property at her mother's death and that appellee, relying upon those assurances, made the transfers. He also found that the transfers by Jennie, Albert and Joseph Cohn were made without consideration; that, after the death of Jennie Cohn, appellee demanded of Albert Cohn and Jessica Cohn Slatis appellee's share of the real estate and personal property transferred to Jennie Cohn in accordance with the joint

agreement of the parties, but that appellants have refused and neglected to deliver to her her share of the property with the exception of the sum of $700 which Jessica Cohn Slatis gave appellee in the years 1935 and 1936.

The master found, also, that subsequent to the transfers of the properties by Jennie Cohn and her son, as hereinbefore mentioned, appellants Jessica Cohn Slatis, Albert Cohn and Joseph Cohn denied to appellee any participation in the management of the properties and withheld from her knowledge of the creation of the trust in the bank, and that defendants Slatis and Albert and Joseph Cohn evidenced bias and prejudice against appellee, which appeared not only from their conduct toward her subsequent to the death of their father, but was evidenced from their conduct and testimony on the witness stand. He recommended that the court declare a constructive trust; that an accounting be had, and that a set-off of $700 be allowed to defendant Slatis. These recommendations were, after overruling exceptions by the chancellor, concurred in, and a decree entered finding that plaintiff was and is entitled to 3/20 interest in the properties therein listed and that defendants account for the rents and profits. The decree also finds that during the ownership of parts of the property by certain of the defendants, arising out of deeds from Jennie Cohn to such defendants, they became and were constructive trustees for plaintiff to the extent of a 3/20 interest in the properties and should account for rents during such period of ownership. The decree also finds that the Liberty National Bank was, from the conveyance to it as trustee, and still is, the constructive trustee for plaintiff to the extent of 3/20 of the interest in the properties transferred to it, and that defendant Slatis is also a constructive trustee of such portion of that property. Partition and an accounting were decreed.

Appellants say that where a constructive trust is sought to be established by parol evidence, the proof must be strong,

unequivocal and unmistakable, and if the evidence is doubtful or is capable of reasonable explanation upon other theories, then proof of the existence of a trust is not sufficient, and this is the rule. The rule also is that to prove a constructive trust, either some element of fraud, positive or constructive, existing at the time of the transaction, or a confidential or fiduciary relation and undue influence by virtue of which one has obtained legal title to property which he ought not in equity and good conscience to have secured, must be established. *Sharp* v. *Bradshaw,* 367 Ill. 526; *Neagle* v. *McMullen,* 334 id. 168; *Streeter* v. *Gamble,* 298 id. 332.

Appellants also argue that appellee was not a competent witness. It is sufficient to say as to this contention, that since the suit is not defended by the defendants as heirs, legatees or devisees of Jennie Cohn, as such, but is defended by them as grantees of deeds made by Jennie Cohn and other defendants, appellee was a competent witness in her own behalf as to the personal transactions with her deceased mother. *Campbell* v. *Campbell,* 368 Ill. 202; *Seaton* v. *Lee,* 221 id. 282; *Goelz* v. *Goelz,* 157 id. 33.

It is not contended by appellee, nor did the chancellor find, that the constructive trusts here found arise out of the original deeds by the children of Herman Cohn, deceased, to their mother Jennie Cohn, but that they were made in accordance with an agreement through which each child was to receive his share of the property upon the decease of their mother, and that it was in violation of this agreement and in fraud of appellee's rights that the subsequent deeds were procured and executed by certain of the defendants, whereby the present status of the property now exists. The decree finds constructive trusts arising out of those latter transactions, and if the evidence supports the claim of appellee that these transfers were made without her knowledge or consent, but in fraud of her rights and in violation of the original agreement, then the Statute of Frauds does not

apply and is no defense though the evidence of the trust is oral, since fraud entered into the transaction. *Suchy v. Hajicek,* 364 Ill. 502; *Housewright v. Steinke,* 326 id. 398; *Brooks v. Gretz,* 313 id. 290; *Stahl v. Stahl,* 214 id. 131.

Appellee's evidence as to the existence of the original agreement, is that Jennie Cohn, the mother, was to take and use the property during her lifetime, and on her death it was to go to the children. The evidence cannot be set out or discussed in detail within the confines of this opinion. Appellee testified positively to the existence of this original agreement. The defendants who denied the existence of that agreement were defendants Slatis and Albert Cohn, against whom relief is sought and upon whom liability is imposed by the decree. The three minors, the master found, were ignorant of the matters at issue, and Mollie Cohn, wife of Abraham Cohn, deceased, declared that she had never discussed business matters with her husband during his lifetime. Defendant Joseph Cohn seemed not, in his testimony, to have remembered distinctly about the matter. The master found that there was an agreement at the time this property was transferred to the mother, that upon her death it should go to the children in their respective shares, and on reading the evidence, we are of the opinion that the record in the case supports that finding. The denial of defendants Slatis and Albert Cohn is not convincing. There is no contention that any consideration passed for these transfers or for those by Jennie, the mother, or for any other transfer shown in the record. Indeed, there is much evidence in the record to indicate that the mother did not know she was making disposition of the property. This is shown in the testimony not only of appellee but in the testimony of the witness Horwitz, who testified that about a year prior to Jennie Cohn's death she had a conversation with her regarding appellee in which she stated that appellee was to be taken care of. The evidence also is that from the

death of her father until her marriage in 1927, appellee, at the request of her mother, occupied her room and bed; that her mother confided in her and that a very close confidential relationship existed between them. The evidence also is undisputed that on two occasions her mother made wills, in the first of which appellee was to be given $15,000, and in the second of which she was to receive her equal share of the estate. These wills were drawn after the deeds, taking all the property from her and putting it in trust for defendant Slatis, and the other transfers, had been made. It seems incredible that had she known she had deeded away the substance of her husband's estate she would have made wills impossible of performance.

There is also evidence in the record of ill feeling and prejudice against appellee by her sister and adult brothers following the transfers of the property. There is evidence that defendant Slatis was not on speaking terms with appellee and that she was determined to prevent her getting any property of their father's estate. In this appellee is substantiated by the witness Horwitz who testified that appellee's mother had told her defendant Slatis did not want appellee to be around or to see her mother. This evidence was further strengthened by that of the witness Mollner, who testified that in 1932 or 1933, he met defendant Slatis in a restaurant which he had advertised for sale; that she had asked him the price of the place and that he told her she reminded him of a young lady he knew; that further conversation developed that the witness Mollner was referring to appellee. He testified that defendant Slatis had stated: "We fixed Fannie. Fannie is no good," and that she also stated that she had fixed appellee through the estate of her mother in such a way that she was not going to get anything.

The master also observed the demeanor of these defendants on the witness stand and in his report found that they evidenced bias and prejudice not only during the period

subsequent to the death of the father but in their testimony on the witness stand. We are of the opinion that the master's findings are supported by the evidence and that the decree of the chancellor in finding the existence of these constructive trusts, arising out of transfers in fraud of appellee's rights, and granting the relief decreed, is correct, and the decree is affirmed.

*Decree affirmed.*