(No. 29608.—

RICHARD JAMES OGLESBY *et al.*, Appellees, *vs.* SPRINGFIELD MARINE BANK, as Trustee, *et al.*—(AUGUSTA SMITH OGLESBY *et al.*, Appellants.)

*Opinion filed Sept. 18, 1946—Rehearing denied November 14, 1946.*

38

THOMPSON, J., dissenting.

CATRON & HOFFMAN, (LACEY CATRON, and INES C. HOFFMAN, of counsel,) all of Springfield, for appellants.

BROWN, HAY & STEPHENS, of Springfield, and EDWIN C. MILLS, LELAND P. MILLER, and HAROLD F. TRAPP, all

of Lincoln, (PAUL W. GORDON, of Springfield, of counsel,) for appellees.

LELAND P. MILLER, of Lincoln, guardian *ad iltem,* (M. I. SCHNEBLY, of Urbana, of counsel,) for James Edwin Oglesby *et al.*

Mr. JUSTICE MURPHY delivered the opinion of the court:

This is an appeal from a decree entered in the circuit court of Logan county. When the cause was here on a former appeal, we could not consider the merits of the case for lack of necessary parties. The decree was reversed and cause remanded with directions to correct such defect. (385 Ill. 414.) Additional parties were added, evidence heard, and a final decree on the merits entered from which this appeal has been taken.

Emma Gillett Oglesby died November 25, 1928, leaving four children, Hiram G. Keays, a son by her first marriage, and John G. Oglesby, Jasper E. Oglesby and Louise Felicite Oglesby by the second marriage. Within the period covered by the several transactions relative to this cause, Louise Felicite Oglesby married Conte Alessandro Cenci. She is variously referred to in this record as Louise Felicite Oglesby, Felicite Oglesby Cenci, and Louise Felicite Oglesby Cenci Bolognetti. In some of the briefs she is Countess Cenci. Herein she will be designated as Countess Cenci, except in quotation of some instrument or document where her name will be quoted as stated therein.

Emma Gillett Oglesby owned a large acreage of land located in Logan county. She disposed of some of her real estate by deed and other parts by will. There are certain inconsistencies in the two methods of disposition. The issue formed by the pleadings is as to whether John G. Oglesby and Countess Cenci, having been named as grantees

in two deeds and beneficiaries under the will, elected to take under the will.

There is no material conflict in the evidence. On April 3, 1922, Emma Gillett Oglesby conveyed, by statutory form of warranty deed, approximately 800 acres of land to her son John. At the same time, by the same form of deed, she conveyed approximately 800 acres to her daughter Countess Cenci. The deeds were not recorded until six days after the death of Emma Gillett Oglesby. The chancellor found, and such finding is not challenged, that both deeds were delivered on or about the date of their execution. It is conceded by the pleadings that the grantees went into possession of their respective tracts of land immediately after the execution of the deeds. John G. Oglesby continued in such possession until his death May 26, 1938, and since then the beneficiaries of his will have been in possession. Countess Cenci's possession continued uninterruptedly to the present time.

The undisputed evidence is that on and prior to the execution of the deeds, there was an oral understanding between Emma Gillett Oglesby, John Gillett Oglesby and Countess Cenci as to the devolution of the real estate after the death of the respective grantees. Such oral understanding was reduced to writing on April 22, 1925. It was not filed for record and the claim is made by appellees that the parties to the instrument kept it a secret and its existence was unknown to appellees until appellants offered it in evidence at the close of the hearing upon which the decree appealed from on the former appeal was based. The effect of the contract upon the title conveyed by the deeds of April 3, 1922, when considered as a part of the same transaction is a controverted question in this case. The terms of the contract and its effect will be discussed later.

On January 27, 1924, Emma Gillett Oglesby executed a will, which was divided into what is designated as items I

to XIII, inclusive. By the fifth item she made disposition of the 800 acres previously conveyed by deed of April 3, 1922, to John G. Oglesby. By the sixth item she disposed of the land formerly conveyed by deed to Countess Cenci. Each of items V and VI is long and deals with conditions that would arise under various contingencies such as survivorship of one beneficiary over others of a class, or the devolution of the title if certain beneficiaries should die without leaving children surviving. The details are not pertinent. It is sufficient to note that by item V, testatrix devised a life estate to John G. Oglesby in the 800 acres formerly deeded to him. By item VI she devised a life estate to Countess Cenci in the land conveyed to her by one of the deeds of April 3, 1922. The remainder in the 800 acres deeded to John G. Oglesby testatrix devised to his surviving child or children or descendants of same. A similar disposition was made in item VI in favor of Countess Cenci and her children as to the lands formerly deeded to her. Item V further provided that if John G. Oglesby survived testatrix and left no lineal descendants, then Countess Cenci was to have an undivided one-half for life and the other undivided one-half was to become a part of the *corpus* of a trust created in item VIII of the will. Plaintiffs-appellees Richard James Oglesby and John Lewis Oglesby are beneficiaries in said trust. The appellee Springfield Marine Bank, is the duly qualified and acting trustee of said trust. Plaintiffs-appellees' action is founded upon the interest which they claim as *cestui que trustent* in the trust created in item VIII. If their claim is sustained then a life estate devised by the will of John G. Oglesby to defendant-appellant Augusta Smith Oglesby, would be defeated and likewise other beneficial interests created by his will would be destroyed.

John G. Oglesby died May 26, 1938, leaving no lineal descendants. Item V of the will of Emma G. Oglesby provided for the contingency that might arise by the death

of John G. Oglesby without leaving lineal descendants and made provision that, subject to the life estate of Countess Cenci and the beneficial interest of the trust created in item VIII, John G. Oglesby was vested with a power of appointment to appoint by deed or will to "any child, children or lineal descendants of any child or children of Louise Felicite Oglesby, Jasper E. Oglesby or Hiram G. Keays" who survived John G. Oglesby. Further provision was made that if John G. Oglesby did not exercise the power of appointment, then such remainder was to go to the lineal descendants of Louise Felicite Oglesby and Jasper E. Oglesby.

Item VI of the will, except for change of names, was similar to item V and disposed of the 800 acres formerly deeded to Countess Cenci. It contained provision for equalizing values of gifts made in the will and charged the 800 acres deeded to Countess Cenci with the payment of $10,000 to John G. Oglesby and $3000 to the trust fund created by item VIII of the will. Such payments were to be made within three years after the will was admitted to probate. Plaintiffs-appellees pray that Countess Cenci may be ordered to pay the said $3000 to the trustee of the trust created in item VIII.

Augusta Smith Oglesby, the wife of John G. Oglesby, survived him and is the executrix of his will. She appears in this case as one of the appellants in her representative capacity and as an individual. Countess Cenci was named a trustee under the will of John G. Oglesby and she appears as coappellant in her representative capacity, as well as in behalf of her individual interests. Whether Countess Cenci made an election between her interest in the 800 acres deeded to her and the benefits of her mother's will is directly involved and an issue in this case, but any other question as to the devolution of the title which may be subject to her directions by deed or will cannot be determined at this time.

By the will of John G. Oglesby, Countess Cenci was devised a fee-simple estate in certain lands which included approximately 230 acres conveyed to him by the deed of April 3, 1922. By the fifth paragraph of his will, he devised approximately 570 acres, being the remaining part of the land conveyed on April 3, 1922, in trust, with directions that from the net income plaintiffs-appellees Richard James Oglesby and John Lewis Oglesby were each to receive a one-sixth part, their sister Emma Jean Oglesby, now Emma Jean Counts, and their brother James Edward Oglesby, a two-sixths each. It was stated in the will that the devise in trust was made in an endeavor to equalize the proportionate share received by the four children of Jasper Oglesby. It was noted that plaintiffs-appellees, Richard James Oglesby and John Lewis Oglesby, were beneficiaries in the trust created in item VIII of the will of Emma G. Oglesby and that the *corpus* of said trust from which they were to receive the income, consisted of about 1193 acres. The will of John G. Oglesby directed that the trust of 570 acres was to continue until James Edward Oglesby (he being a minor at this time) should attain the age of fifty years, and upon the happening of such event, the trustee was empowered to sell the land and divide the proceeds to the same beneficiaries, in the same proportion as they had received the income. If any of them were dead at that time, their shares were to go to their lineal descendants. If all the beneficiaries (the four children of Jasper Oglesby) should die prior to the period fixed for the termination of the trust and leave no children surviving, the *corpus* of the trust, that is the 570 acres, should go to Countess Cenci for life with power of appointment to her to appoint by deed or will to some child or children of hers or of Hiram G. Keays. In the event she failed to exercise the power and make the appointments, the remainder was to go to the children of

Countess Cenci and Hiram G. Keays that were living at the time of the death of the Countess.

The foregoing provisions of John G. Oglesby's will were modified by codicil. It was provided by codicil that testator's widow, Augusta Smith Oglesby, should have a life estate in the 570 acres, which estate was to precede the trust provisions contained in the will.

If John G. Oglesby and Countess Cenci acquired fee-simple titles in their respective 800 acres of land by the deeds of April 3, 1922, then the fifth and sixth items of the will of Emma Gillett Oglesby devising the same lands created an inconsistency. Appellees contend that when the will of Emma Gillett Oglesby was admitted to probate, John G. Oglesby and Countess Cenci were forced to make an election as to whether they would continue to hold that which had been conveyed by deed and forego the beneficial provisions of the will, or whether they would accept the will, thereby being required to renounce their interests acquired by deed in the respective tracts of land.

Giving force to the deeds of April 3, 1922, and the contract of April 25, 1925, John G. Oglesby was required to make a will devising a life estate in the 800 acres deeded to him to Countess Cenci and directing the remainder to a child, children or descendants of the same, of John D. Gillett. On the other hand, by item V of the will, John G. Oglesby was devised a life estate and if Countess Cenci survived him, she was to have an estate for life. Since John G. Oglesby died without lineal descendants, the provision of the will applicable to such contingency vested the power in John G. Oglesby to appoint by will to child, children or lineal descendants of the same of Countess Cenci, Jasper E. Oglesby or Hiram G. Keays. A pertinent provision of item V was that if John G. Oglesby exercised the power of appointment, the title to the 800 acres, subject to the several life estates, should vest in the remainder-

men so selected by him by virtue of the provisions of the will.

The doctrine of election as between inconsistent rights is well established. (*Martin* v. *Casner,* 383 Ill. 260; *Palenske* v. *Palenske,* 281 Ill. 574; *Pace* v. *Pace,* 271 Ill. 114; *Kidder* v. *Douglas,* 194 Ill. 388; *Buchanan* v. *Mc-Lennan,* 192 Ill. 480; *Carper* v. *Crowl,* 149 Ill. 465; *Woolley* v. *Schrader,* 116 Ill. 29; *Wilbanks* v. *Wilbanks,* 18 Ill. 17.) The law does not permit a beneficiary in a will to accept that which benefits him and reject that which operates to his prejudice. In the application of this principle it has been held to include property owned by the legatee or devisee and which the testator had disposed of by will. In *Carper* v. *Crowl,* 149 Ill. 465, it was said, "if a testator intending to dispose of his property, includes in the disposition, property of another person, and at the same time gives to such other person an interest in the estate of the testator, such person will not be permitted to defeat the disposition made by the will and at the same time take under it. He is put to his election whether he will retain his own property or take the benefit conferred by the will. * * * For, if the donee be permitted to accept the benefit and at the same time decline the burden, it is to defraud and defeat the intent and design of the donor."

On the face of the instruments referred to there appears to be a conflict of interest between Augusta Smith Oglesby and Countess Cenci, but no point is made of such fact on this appeal. They join in the same brief. The brief filed on behalf of Emma Jean Oglesby Counts and the guardian *ad litem* for James Edward Oglesby in the main adopts the brief filed on behalf of the other appellants, Augusta Smith Oglesby and Countess Cenci.

The deeds of April 3, 1922, each recited a consideration of $1 and love and affection and were, standing alone,

sufficient to vest a fee-simple title in the grantee named. Appellants contend the deeds of April 3, 1922, and contract of April 22, 1925, must be considered together. Such contention finds support in the cases. (*Hudnall* v. *Ham,* 183 Ill. 486; *Myers* v. *Myers,* 167 Ill. 52; *Freer* v. *Lake,* 115 Ill. 662.) Appellants contend the deeds and contract considered together were effective to vest a life estate in John G. Oglesby in the 800 acres deeded to him and a life estate in Countess Cenci in the 800 acres described in her deed. It is further contended that the title, subject to the life estates, vested in the respective grantees in trust for the benefit of those to whom such grantees were to devise, namely: the lineal descendants of John D. Gillett. On this theory the proposition is advanced that John G. Oglesby, holding title to the remainder in trust, was not seized of such an interest as to require him to make an election. Appellees do not question that the deed and contract should be considered together but they deny that such instruments created a trust. The character of the estate taken by John G. Oglesby under the deed and contract is one of the main controverted questions in this case.

The contract of April 22, 1925, consisted of two parts, each part making reference to the other. It will be noted that the covenants are personal to particular persons. One part contained the covenants and agreements signed by John G. Oglesby and Countess Cenci, and the other was signed only by Emma Gillett Oglesby. Each of them refers to the deeds of April 3, 1922. The part signed by John G. Oglesby and Countess Cenci stated that "as a part of the understanding so had and entered into between the said Emma Gillett Oglesby and the parties hereto the said parties hereto and each of them did agree with each other and with the said Emma Gillett Oglesby that if she, the said Emma Gillett Oglesby, would make, execute, acknowledge and deliver the deeds hereinbefore mentioned, that the parties hereto and each of them as the grantees in said

deeds would respectively by their separate last will and testament, devise and will the said land hereinbefore described to the survivor of the parties hereto for and during the term of the natural life of such survivor with the remainder in fee simple to some child, children or descendants of a child or children of John D. Gillett, the same being the now deceased father of the said Emma Gillett Oglesby, and that such survivor of the parties hereto would, after the death of the other, by deed, convey or by last will and testament devise and will (subject to the said life estate therein of the surviving party) all of said lands in said deeds described together with his or her entire right, title and interest in the said lands or any part thereof to some child, children or descendant of a child or children of the said John D. Gillett, deceased." Then followed the covenant of John G. Oglesby with Countess Cenci, that he would execute a will devising a life estate to Countess Cenci in the 800 acres conveyed to him by the deed of April 3, 1922, and that he would devise the remainder in fee simple "to some child, children or descendants of a child or children of John D. Gillett, deceased." The said instrument contained a like agreement by Countess Cenci as to her 800 acres whereby she covenanted to execute a will vesting in her brother John G. Oglesby a life estate and the remainder to a child, children or descendant of the same, of John D. Gillett. The third paragraph of the instrument contained covenants, one with the other, whereby the survivor would, after the death of the other, by deed convey or by will devise all lands conveyed by the two deeds of April 3, 1922, "to some child, children or descendant of child or children of John D. Gillett, deceased, therein and thereby vesting in said child, children or descendant of a child or children of said John D. Gillett, deceased, the title in fee simple to the grantees by him or her so possessed under the deed from Emma Gillett Oglesby." In the fourth paragraph it was mutually agreed

by John G. Oglesby and Countess Cenci, that neither of them would either directly or indirectly execute any instrument which would create a lien upon any of the lands described in the deed. In the fifth paragraph it was agreed that if there should be a violation of the covenants of the fourth paragraph and a lien or judgment should be created against any of the lands, then the party who had kept the covenant not to encumber would have the right to satisfy the lien and to receive a deed from the one who defaulted, and take possession of the property and hold it in trust for the benefit of the other for life, the income to be applied to the payment of such judgment or lien. Each covenanted they would not institute any proceeding to void any conveyance or devise by will made by the other to affect the vesting of the title in a child, children or descendants of a child or children of John D. Gillett, deceased.

The husband of Countess Cenci executed an instrument which was attached to the contract, in and by which he released all interest, present or inchoate, that he had in the lands deeded to Countess Cenci.

The instrument signed by Emma G. Oglesby recited "that a part of the consideration for the said deeds so made as aforesaid was the agreement between the said John G. Oglesby and Louise Felicite Oglesby and with me that they and each of them would hold, devise, convey and transfer the said lands in the manner, to the persons, and for the terms in said writing set forth and to which this instrument is attached." The instrument contained further provisions which commended and approved the covenants of the John G. Oglesby-Countess Cenci agreement, and recited that the covenants therein contained correctly stated the understanding and agreement made between all of them at the time the deeds were made, and that "the above mentioned conveyances really being the completion of an understanding between the three of us some years before the deeds were made and shortly after the death

of their father." The instruments signed by John G. Oglesby, Countess Cenci and her husband were under seal and duly acknowledged. The instrument signed by Emma G. Oglesby was not under seal nor was it acknowledged.

Did the deeds and contract, taken as evidencing a single transaction, create an express trust in which John G. Oglesby and Countess Cenci were to hold the legal title or some part thereof as trustees? In discussing this question we adopt appellants' theory that if they held as trustees then they were not required to make an election. Ordinarily, where an express private trust is relied on, the instruments introduced in evidence to establish such trust contain words such as "in trust" or "for the use of" or "to have and to hold for the benefit of" which by their use carry the inference the settlor was reposing trust and confidence in the donee for a particular purpose. The use or nonuse of such words is not the controlling criteria as to whether an express trust has or has not been created, but in this case it is significant the scrivener did not use any words which by their mere presence in the instrument convey the thought an express trust was intended. If John G. Oglesby and Countess Cenci became trustees for any interest in the lands, it is by reason of their agreement to make testamentary disposition of the property rather than any language found in the contract which implies an intent to create an express trust.

The contractual arrangement between Emma G. Oglesby and her two children evidences a purpose on the part of the mother of making a disposition of the property that would insure it being kept in the name of some one or more of the lineal descendants of her father, John D. Gillett. She wanted her son and daughter to have immediate possession with the right to the rents and profits, but a fair construction of the written evidence of the agreement indicates that as part of the consideration for such use and enjoyment she required them to agree with one another

and with her that being seized of the title they would each execute wills giving the survivor a life estate with remainder to a child, children or descendants of same, of John D. Gillett. The deeds indicated an intent on the part of the grantor to convey a fee-simple title to the grantees and there is no language in the contract which shows an intent to restrict or cut down the estates which the deeds purported to convey. A fair construction of the contract and deeds evidences a purpose of Emma G. Oglesby to vest the full title, both legal and equitable, in the grantees and to permit her direction as to the future devolution of the title to rest on the covenants of her son and daughter that they would make testamentary disposition in accordance with her wish. The Oglesby-Cenci part of the contract is based on the mutual promises of the parties and the agreement with Emma G. Oglesby and her written approval indicates the same considerations. The language "that for and in consideration of the mutual promises herein set forth to be kept and performed by each of the parties hereto with the other" and with Emma G. Oglesby—"we and each of us do hereby agree and declare as follows" are words of contract and covenant and do not evidence an intent to separate the legal title from the equitable and place the legal title in the grantees as trustees. In the part of the contract signed by Emma G. Oglesby, she confirms the mutual covenants of John G. Oglesby and Countess Cenci as evidencing the understanding and agreement between the parties when the deeds were made. Such language does not indicate the deeds had been signed with any thought that the grantees were to become trustees of the title.

These conclusions lead to the further question as to the effect the mutual covenants to make testamentary disposition had upon the title and estates conveyed by the deed. Does a person who owns a fee simple in land, holding both the legal and equitable estates, constitute himself

a trustee, when, for a valuable consideration, he promises that he will execute a will disposing of the property to certain beneficiaries? Contracts of similar import have been before this court in a number of cases (*Hudnall* v. *Ham*, 183 Ill. 486; *Whiton* v. *Whiton*, 179 Ill. 32; *Dicken* v. *McKinley*, 163 Ill. 318,) where the nature and character of such agreements were considered. Most of them were actions by a promisee, after the promisor's death, brought to enforce the rights of the promisee. It was held that the remedy of the promisee was referable to the power a court of equity may exercise to prevent a fraud and is controlled by the same principles on which an action for specific performance is based. It has been said that during the lifetime of the promisor the promisee could not demand specific performance, for such a contract was not capable of specific execution in the lifetime of the promisor, and after his death it was impossible. To avoid defrauding the promisee by the failure of the promisor to make a will, courts of equity seized upon the theory of a constructive trust as a means to prevent such fraud. In some of the cases it is said the promisor held in trust, but it will be noted that it was not necessary in those cases to distinguish between an express trust created by an agreement of parties and a constructive trust created by operation of law to prevent a fraud. We have found no cases in this State, and none have been cited, where an action was brought by a promisee against the promisor in the latter's lifetime on the theory the promisor held the legal title and the promisee the equitable title.

In *Barrett* v. *Geisinger*, 179 Ill. 240, we quoted with approval from *Bollman* v. *Overall*, 80 Ala. 451, which quotation was devoted largely to a discussion of the nature and character of the contract to devise lands and included in such quotation there was the following: "It is not claimed, of course, that any court has the power to compel a person to execute a last will and testament carrying

out his agreement to bequeath a legacy, for this can be done only in the lifetime of the testator and no breach of the agreement can be assured so long as he lives, and after his death he is no longer capable of doing the thing agreed by him to be done. But the theory on which the courts proceed is to construe such an agreement (unless void under the Statute of Frauds or for other reason) to bind the property of the testator or intestate so far as to fasten a trust on it in favor of the promisee, and to enforce such trust against the heirs and personal representatives of the deceased, or others holding under them charged with notice of the trust. It is in the nature of a covenant to stand seized to the use of the promisee, as if the promisor had agreed to retain a life estate in the property, with remainder to the promisee in the event the promisor owns it at the time of his death, but with full power on the part of the promisor to make any *bona fide* disposition of it, during his life, to another otherwise than by will." See *Oswell* v. *Nehls*, 233 Ill. 438.

*Noble* v. *Metcalf*, 157 Ala. 295, 47 So. 1007, was an action brought in the life of the promisor by a promisee to enjoin waste on the lands which the promisor had agreed to leave by will to the promisee. It was held the promisee had no estate, legal or equitable, in the lands to support such an action.

In *Stahl* v. *Stevenson*, 102 Kans. 447, 171 Pac. 1164, an action was brought to enforce a contract to die intestate, thereby enabling the promisee to inherit intestate property. A question arose as to whether such a contract came within the Statute of Frauds and the character of such a contract. It was said "that the trust relied upon by the plaintiff arises by implication of law. No interest in the property then owned by the plaintiff's grandfather [promisor] was created by their agreement, and no trust then arose with respect to any of that property. He might have given away or lost all the property he then had with-

out a violation of his contract. But when he died leaving a will giving to others everything he owned at the time of his death, equity was empowered to impress a trust upon it for her benefit [promisee] as a means of giving her relief to which she is entitled in good conscience—a trust which we regard as resulting by implication of law from the conduct of the testator and the relation of the other claimants to the property."

We hold that under the language of the contract and deeds, John G. Oglesby and Countess Cenci became seized with the full fee-simple title to their respective tracts of land and that they did not, by virtue of their covenant to make a will, become seized of a legal title in the respective tracts for the benefit of the beneficiaries they might appoint by will from among the lineal descendants of John D. Gillett. Such prospective beneficiaries had no equitable estate *in praesentia* in the lands described in the deeds.

Under the views expressed, it will not be necessary to consider appellees' contentions in the form of an alternative that the indefiniteness of the contract as to who might be the ultimate beneficiaries (lineal descendants of John D. Gillett) renders the contract inoperative as an express trust even though the terms of the contract in other respects were sufficient to create a trust. This discussion as to the estate of John G. Oglesby has been restricted to the character of title by which he held from the date of the contract to the date of his death and is not intended as determining any rights Countess Cenci would have under the contract as survivor or that the lineal descendants of John D. Gillett would have as remaindermen. Such matters were not made issues by the pleadings. John G. Oglesby and Countess Cenci did not hold title in trust and were not, for that reason, excused from making an election when their mother's will was admitted to probate.

Appellants rely upon cases such as *Wetmore* v. *Henry,* 259 Ill. 80; *People* v. *Kaiser,* 306 Ill. 313, as sustaining

their theory that a trust was created. In the *Wetmore case*, testatrix devised to her nephew "all the rest and residue of my property both real and personal and wherever situated, in trust, nevertheless for the purposes of carrying out the instructions herein given." The trustee was given broad discretion as to whom he should appoint as beneficairies. The distinction between that case and this is that the will specifically devised the land in trust for the benefit of testatrix's heirs-at-law whom the trustee should select as beneficiaries, while in this case the land was not deeded in trust. The similarity in the two cases in the selection of the beneficiaries does not make the *Wetmore case* controlling on the question as to whether a trust was created. A similar situation was present in the *Kaiser case*. The residuary clause of the will directed that the property, when converted into cash, should go to the executor named "in trust, and he is to give and divide the same among such charitable or benevolent institutions or needy persons or families as he shall deem most deserving of such reward or assistance." The case has no application on this point.

Another significant fact is that when the parties executed the contract, they evidently considered that the grantees in the deeds had acquired a fee simple absolute. Otherwise, there could be no explanation for the execution of a release of Countess Cenci's husband of all interest he had as husband in the lands she acquired by her deed. If she took a life estate with remainder in trust, then he had no right as her husband in said lands.

Appellants' second contention is that Emma G. Oglesby having executed her will on the 27th day of January, 1924, her later act sanctioning and approving the contract of John G. Oglesby and Countess Cenci on April 22, 1925, constituted an implied revocation of items V and VI of the will, and was a withdrawal of the lands described in such items from the operation of the will. The conten-

tion, as stated in the briefs, embodies two separate and distinct principles of law, one of which is the possible implied revocation of a will by the subsequent execution of another instrument, the provisions of the later being inconsistent with the provisions of the will. The other is, that if a testator makes a conveyance of lands which he has previously devised, he thereby withdraws the lands from the operation of the will.

The first of these principles rests on the fact that testator owned the land when he executed his will and subsequently made disposition of it by another instrument which is inconsistent with the will. The principle has no application to this case for the reason that Emma G. Oglesby did not own any interest in the land when she executed her will and the inconsistency which supports the principle arises from the inconsistent acts of the owner. By reason of this conclusion, we will not discuss the principles by which an implied revocation may be declared. For same, see *Lasier* v. *Wright*, 304 Ill. 130.

The principle, that a conveyance of land previously devised withdraws the land from the will, is founded on the ambulatory character of wills. A will does not become effective until the death of the testator and if a testator, subsequent to the execution of the will, conveys the land, there is no *res* upon which the will may operate. *Meily* v. *Knox*, 269 Ill. 463; *Yott* v. *Yott*, 265 Ill. 364. This principle likewise has no application for, as previously held, Emma G. Oglesby did not own any interest in the lands when she executed her will.

Another persuasive argument against appellants' second contention is that it is based on an erroneous conclusion that the execution of the deeds of April 3, 1922, and the execution of the contract of April 22, 1925, were two separate and distinct transactions separated in point of time by more than three years. The contract is that the covenants of John G. Oglesby and Countess Cenci, as expressed

therein, were a part of the consideration for the deeds and that the terms of such agreement had been verbally agreed upon prior to the execution and delivery of the deeds. When the verbal agreement was later reduced to writing, the written instrument became the evidence of the pre-existing agreement. It referred back to the deed transaction, was a part thereof and became effective as between the parties as of the date the deeds were executed and delivered. The agreements which Emma G. Oglesby sanctioned and approved were entered into before she executed her will.

Appellants also urge that Emma G. Oglesby did not intend that her son and daughter should be required to make an election. The doctrine of election, as applied to gifts by will, is founded upon the equitable principle that he who would accept the bounty of another must do so on such terms and conditions as the testator may choose to impose. (*Palenske* v. *Palenske,* 281 Ill. 574.) There is no requirement of election unless the testator confers some benefit on the beneficiary and by the terms of his will also assumes to dispose of some interest owned by such beneficiary. It must appear on the face of the will that the testator intended to create such inconsistency and to this extent the doctrine of election is a question of will construction. If it is apparent testator intended that both of the inconsistent dispositions of property should become effective, then equity requires the devisee to elect between such inconsistent rights. (28 R.C.L. 328.) In Page on Wills, Vol. 4, p. 1347, it is said: "The intention of testator to dispose of property or interests adverse to those of the devisee, must ordinarily be clear to put the devisee to his election."

In determining whether Emma G. Oglesby intended to create in her will inconsistencies which would force her son and daughter to make an election, we must be guided by the established rules of will construction. The whole will

and all its parts must be considered. (*Carlin* v. *Helm*, 331 Ill. 213; *McCormick* v. *Sanford*, 318 Ill. 544,) and the intent which controls is that which is manifest, either expressly or by necessary implication, from the language of the will. *Rock Island Bank and Trust Co.* v. *Rhoads*, 353 Ill. 131; *Zierau* v. *Zierau*, 347 Ill. 82.

In the reading of the will of Emma G. Oglesby, two closely related thoughts seem to have predominated in her mind and furnished the pattern for making disposition of her property. The will evidences a studied purpose to make a disposition of her own property, so that it, with what her children had received from other inheritances, would give them approximately equal benefits. In explanation of why the son Hiram G. Keays had not been given greater benefits, testatrix said that he had received a large estate by devise from his grandfather John D. Gillett, and that she was assured her son's wish would be that his brothers and sister should be equally provided for. A similar intent is found in item VIII wherein she created a trust for her son Jasper and on certain conditions to his lineal descendants. As a part of the *corpus* of the trust, she devised an undivided one-fourth interest in lands which had belonged to John D. Gillett and which one-fourth interest came to Jasper as an inheritance from his grandfather. But Jasper, by the errors of youth and inexperience, had lost such estate and his mother had acquired and held it in her own right. Such undivided interest extended into approximately 1650 acres in which Emma G. Oglesby was given a life estate with remainder to her child or children that survived her. In item IX, she recommended a division of the 1650 acres between her four children, and in proposing the same she said she believed it to be "just and equitable."

The other thought which appears to have held prominence in testatrix's disposition of her real estate was her desire to direct the devolution of the title so far as the

law would permit to succeeding generations of her lineal descendants. The many conditions and contingencies provided for furnish ample proof of such intent.

The benefits that John G. Oglesby received by item V and those received by Countess Cenci under item VI have been noted, but each of them received additional gifts and benefits. By item II Countess Cenci was bequeathed a piano, the jewels and personal belongings of testatrix. All other personal property, except a small item of jewelry and a bequest of $500, was bequeathed to John G. Oglesby. In item IV, testatrix gave each of them and the survivor thereof a life estate in the ancestral home known as Oglehurst. The survivor was also vested with a power to appoint by deed or will said home to any child, children or bodily issue of her four children. A memorial chapel, erected to the memory of John D. Gillett, and the land on which it was located was devised to John and Countess Cenci with certain power of appointment. They were each given a one-fourth interest in the residue and were named as executor and executrix of the will. There is no basis to reason that Emma G. Oglesby misapprehended the fact of ownership of the land involved. About two years prior to the execution of the will, she executed and delivered the deeds to the respective grantees and evidently knew that the grantees went into possession and collected the income and profits therefrom. The execution of her part of the contract of April 22, 1925, is conclusive evidence that she had not forgotten the execution of the deeds or the interests conveyed to the grantees therein.

In the face of these facts, we can not say that Emma G. Oglesby included items V and VI on a misapprehension of her lack of ownership of the lands described in such items. In the execution of her purposes, that each of her children should have equal advantages, and that the title to the lands should be continued as long as possible in her

lineal descendants, it was necessary for her to consider the benefits and values of former gifts, some of which she had made, and the advantages that some of the children had received from other inheritances. In this connection it should be noted that the class from whom John G. Oglesby and Countess Cenci could make an appointment under the contract consisted of the lineal descendants of John D. Gillett, which included a larger membership than the class specified in her will where the appointment was restricted to her own lineal descendants. The express language of the will creates an inconsistency that required an election, and in view of the facts appearing on the face of the will, we believe it to have been the intent and purpose of testatrix that the inconsistent provisions should both be given effect. When this appears, equity applies the doctrine of election.

Appellants further contend that neither John G. Oglesby or Countess Cenci elected to take under the will. The will was admitted to probate December 21, 1928, and no election was required until the provisions of the will became known to them after their mother's death. In their capacities as executor and executrix, they caused the will to be probated and qualified as representatives of the estate and administered on it. They did not inventory as assets of the estate the lands which had been deeded to them. In a proceeding before the county judge of Logan county to fix inheritance taxes, held in March, 1929, the executor and executrix filed the form of affidavit used in such hearings, and in it reference was made to the deeds of April 3, 1922, and copies attached as exhibits. They claimed said lands were not assets of the estate. It was averred in the affidavit that the deeds were not made in contemplation of death, that Emma G. Oglesby did not reserve to herself any benefits or enjoyments out of the real estate conveyed and that on delivery of the deeds the grantees went into

possession of their respective tracts. John G. Oglesby was devised a life estate·in the land formerly deeded to him but his collection of the rents after his mother's death was evidently under the claim of title derived from the deed. Testifying as a witness in 1932 in·a cause unrelated to this, he stated that he and his sister acquired title by deeds and not by will. The farm manager testified in this cause to conversations in which John G. stated the title to his and his sister's land came by deed. Since his death, the beneficiaries in his will have been in possession. Countess Cenci exercised the same claim of ownership in her lands as her brother did in his.

Appellants refer to the provisions of John G. Oglesby's will and urge that the devises made of these lands is in substantial recognition of the terms of the contract of April 22, 1925. As previously stated, the will conflicts·with the contract in that it devised a life estate to Augusta Smith Oglesby who was not a member of the class (lineal descendants of John D. Gillett) to whom he covenanted he would devise it by will.

Appellants say that Countess Cenci claims title to her lands by deed ·and is bound by the contract. However, her acknowledgment of the contract starts of recent date. Her original and first amended answer were drafted on the theory she acquired title by deed and no mention was made of the contract. It was late in the first hearing that the contract was produced and her answer amended to meet the proof of the contract. No significance is attached to such withholding of the contract except to show that the claim of title now made did not begin on the probate of the will.

On April 6, 1929, John G. Oglesby conveyed a lot in Gillett's Addition to Elkhart to the Elkhart State Bank for the use of a purchaser and received a consideration of $2000. The lot so transferred was conveyed to him by

the deed of April 3, 1922. On August 21, 1929, Countess Cenci conveyed 35 acres in Gillett Park for a consideration of $3500. This tract was described in the deed and was devised in item VI of the will.

The acts and conduct above related indicate John G. Oglesby and Countess Cenci continued after their mother's will was probated to claim a title in their respective tracts consistent with the one conveyed by the deeds. The following facts are cited as showing what they did as tending to show an acceptance of the benefits of the will. John G. accepted all the personal property given him by the will. In the acceptance of such bequest the record shows that in January, 1929, the executors filed a sworn petition in the probate court, in which it was alleged that Emma G. Oglesby was the beneficial owner of 30 shares of stock in the Ridgely Farmers State Bank which John G. held for her as trustee, that Emma G. Oglesby bequeathed all her personal property to John G. Oglesby, including the bank stock, that he desired to take the same in kind; and that it would not be needed to pay the debts of the estate. The prayer was to have the stock transferred to John G. Oglesby "in his individual capacity, as heir at law and legatee of the said Emma G. Oglesby." An order was entered for a transfer of the stock as prayed. John G. Oglesby and Countess Cenci resided with their mother in Oglehurst at the time of her death. After she died they continued in possession enjoying the use of the personal property bequeathed to them. They also enjoyed the rents from the acreage, (about 50 acres,) which was a part of the home estate.

On February 8, 1929, the four children of Emma G. Oglesby, being her only heirs-at-law, entered into the following agreement: "We, the undersigned, do hereby jointly and severally ratify, confirm, and approve the terms and provisions of the last Will and Testament of Emma Gillett

Oglesby, deceased, as the same has been admitted to probate in the County Court in the County of Logan and the State of Illinois, and we and each of us do hereby severally covenant and agree to and with each other that we will not at any time hereafter, either directly or indirectly in any Court of law or in equity contest, dispute or seek to in any manner avoid the terms and provisions of the said Last Will and Testament of Emma Gillett Oglesby, deceased, and we do further severally agree that each and every of the several bequests and devises in said Will named shall be and remain in full force and effect according to the tenor of the said last Will and Testament of Emma Gillett Oglesby and each of which as the sole and only heirs-at-law of Emma Gillett Oglesby we do ratify, confirm, and approve." Such instrument was placed of record the day following its execution.

Appellants advance certain theories contending the facts showing election to take by will as related did not actually constitute an acceptance of the benefits of the will. In this connection it is said the personal property bequeathed to John G. Oglesby and accepted by him was not of sufficient value to pay the debts against the estate. The final report of the executors confirms this statement except that we have no information as to the value of the 30 shares of bank stock at the time of testatrix's death. The stock was not inventoried nor valued as an asset in the inheritance tax proceeding. However, the value of the items accepted is of no consequence except to show the improbability of a beneficiary accepting a bequest and taking the property in kind, which gift was onerous rather than beneficial. The application of the doctrine of election depends on whether the beneficiary who has been devised inconsistent rights has elected to take one to the exclusion of the other, and this without regard as to which was of the greater value. *Barbour* v. *Mitchell*, 40 Md. 151.

Appellants contend that on the following facts the contract is restricted in its application to item IX of the will. As stated, Emma G. Oglesby was devised by her father's will a life estate in about 1650 acres. The remainder was devised to her children so that after her death they held as tenants in common. In item IX of her will, she related such facts and made suggestions as to a division of the lands and the particular tracts each should take. The same day the children signed the foregoing contract, deeds were exchanged between them dividing the lands in accordance with their mother's suggestion. Appellants say the contract refers to the suggestions testatrix made in item IX. The terms of the contract are not limited to such transaction. In fact, testatrix did not purport to devise the lands described in item IX. The language used in said item was nothing more than a suggestion, an expression of a hope that the lands would be divided as suggested because she deemed such a division to be fair and equitable. The language of the contract is comprehensive and includes "each and every of the several bequests and devises in said will named." Furthermore, the exchange of deeds consummated the division of the lands in accord with item IX so that the making and recording of the contract would be useless as to such division.

During the trial appellants offered to prove by Countess Cenci that the contract was intended by the parties to refer to item IX. Where a contract is ambiguous and the intent with which it was made is uncertain, oral evidence is admissible in explanation of its terms. But oral evidence cannot be introduced to vary the terms of the contract or to contradict its plain provisions. (*Noble* v. *Fickes,* 230 Ill. 594.) Such offer of proof was properly rejected. The contract applies to "each and every of the several bequests and devises" and the agreement was that they "shall be

and, remain in full force and effect according to the tenor" of the will.

Appellants say that if John G. Oglesby and Countess Cenci accepted the benefits of the will, they did it without knowing that such acceptance would prevent them from claiming under the deeds and that an acceptance under such conditions "could not be such a conscious choice between alternatives as to constitute a binding election." Cases are cited as though the acceptance was made on a mistake of fact. There was no mistake of fact. John G. Oglesby and Countess Cenci were the representatives of the estate, had the personal property appraised and an inheritance-tax value fixed on all the assets which they considered belonged to the estate. The evidence indicates that they had an intimate knowledge of their mother's business affairs. It may be they did not know of the doctrine of election and its application to inconsistent rights created by will. That was a mistake of law. The facts related showing that both beneficiaries claimed title by deed and collected benefits from the lands based on such title indicates they were not apprised of the duty equity imposed on them to make an election, but ignorance of law is no excuse under the facts of this case. The evidence supports the chancellor's finding that an election to take the benefits of the will was made by John G. Oglesby and Countess Cenci and that it was made under circumstances that make it binding. This cause was submitted on the question as to whether the decree was correct in holding that an election to take under the will had been made by John G. Oglesby and Countess Cenci. The relief which the decree granted following such conclusion has not been attacked, and having confirmed the decree on the question of election, it must be affirmed as to the relief allowed.

Many cases have been cited which have not been analyzed or distinguished in this opinion. The unreasonable

length to which this opinion has already been extended prevents further discussion of the cases. Suffice it to say, the cases have been examined and were found either not to be in point, or to be distinguishable on the facts, or the principles announced are covered by other cases to which we have referred.

The decree of the circuit court was correct and is affirmed.

*Decree affirmed.*

Mr. JUSTICE THOMPSON, dissenting:

I cannot agree with the majority opinion that the execution of the deeds of April 3, 1922, from Emma Gillett Oglesby to John G. Oglesby and Countess Cenci, the terms of which were reduced to writing by the instrument of April 22, 1925, did not create a trust.

The opinion holds that the deeds of April 3, 1922, from Emma Gillett Oglesby, grantor, to her son John and her daughter, were absolute conveyances and that the written instrument of April 22, 1925, was merely a contract or covenant on the part of the grantees concerning their testamentary disposition of the land and did not create or manifest a trust. It is undisputed that the deeds were made in accordance with and in consideration of the grantees' agreement and promise to the grantor, as evidenced by the written instrument of April 22, 1925, that they would hold and transfer the land to the persons and according to such agreement; and, since there is no contention that there was any fraud, either positive or constructive, practiced upon the grantor to induce the conveyances or that the grantees obtained the conveyances by virtue of any confidential relation or undue influence, there was no implied or constructive trust resulting from the transaction. (*Davids* v. *Davids,* 333 Ill. 327, 331; *Gilbert* v. *Cohn,* 374 Ill. 452, 459; *Neagle* v. *McMullen,* 334 Ill. 168; *Sharp* v. *Bradshaw,* 367 Ill. 526; *Steinmetz* v. *Kern,* 375 Ill. 616.) The

agreement upon and in consideration of which the deeds were made was an express trust which, under section 9 of the Statute of Frauds, could not be enforced unless in writing. (*Suchy* v. *Hajicek*, 364 Ill. 502, 509; *Davids* v. *Davids*, 333 Ill. 327; *Monson* v. *Hutchin*, 194 Ill. 431.) But, as the oral agreement, in consideration of which the deeds were made was subsequently, on April 22, 1925, reduced to writing, in which written instrument the grantees stated that the deeds were made in consideration of such agreement and further therein expressly agreed to perform the same and transfer the land to the persons and in accordance with the terms of such agreement, which were fully set out in the instrument, this writing would create and manifest the trust, as required by the Statute of Frauds, and this would be true even though the trust was originally void because not reduced to writing. A person holding the legal title to lands may make a written declaration, which is binding, that he holds the same in trust or for the benefit of another. (*Fast* v. *McPherson*, 98 Ill. 496, 503.) Where lands have been conveyed to one without any attempt to declare a trust at the time, but a trust was intended, he may afterward, by letter or any other instrument in writing, declare that he holds the same in trust, and such declaration of trust will be binding, since the right to thus declare a trust in the first instance implies the right to make certain and specific a trust before attempted to be declared. (*Rankin* v. *Bancroft & Co.* 114 Ill. 441, 454.) Thus, the execution by the two grantees of the written instrument of April 22, 1925, was a binding declaration of the trust upon which they had received the conveyances. The release of the daughter's husband and the written approval of the mother, both of which were attached to the written declaration of the grantees, neither prevented nor accomplished the creation of the trust, but the one merely approved and confirmed the written declaration of the terms upon which the conveyances were made and the other was

to remove the husband's inchoate right of dower, which was otherwise an incumbrance or cloud upon the legal title.

The written instrument of April 22, 1925, evidenced the existence of a trust, since the use of the words "trust" or "trustee" or any particular forms of words is not necessary, (54 Am. Jur. 50, sec. 40; *Wittmeier* v. *Heiligenstein,* 308 Ill. 434, 436,) but the rule is that any expression which shows unequivocally the intention to create a trust will have that effect, and that "Any agreement or contract in writing made by a person having the power of disposal over property, whereby such person agrees or directs that a particular parcel of property or a certain fund shall be held or dealt with in a particular manner for the benefit of another, in a court of equity raises a trust in favor of such other person against the person making such agreement, or any other person claiming under him voluntarily or with notice." *Wittmeier* v. *Heiligenstein,* 308 Ill. 434, 437.

The rule of equitable construction announced and adhered to by this court is that any agreement or contract in writing made by a person having the power of disposal over property, whereby such person agrees or directs that a particular parcel of property or a certain fund shall be held or dealt with in a particular manner for the benefit of another, in a court of equity raises a trust in favor of such other person against the person making such agreement. (*Osborn* v. *Rearick,* 325 Ill. 529; *Wittmeier* v. *Heiligenstein,* 308 Ill. 434.) A writing which describes with a reasonable degree of definiteness the property, the purposes of the trust and the beneficiaries is sufficient. Such a writing is adequate for the purposes of the Statute of Frauds regardless of its form, and irrespective of whether it was the intention thereby to create a trust. (Tiffany's Real Property, 3d ed. vol. 1, sec. 254, p. 434.) Tested by these principles, the language used in the contract of April 22, 1925, shows unequivocally the creation of a trust. It

sets forth the agreement and understanding between the grantor and grantees under which the deeds were executed, and it was acknowledged therein by John G. Oglesby and Countess Cenci, the parties signing the contract, that they acquired title under the deeds only for the purpose of carrying out such understanding and agreement. The contract of April 22, 1925, obligated both John G. Oglesby and the Countess Cenci to give, devise and bequeath to the survivor for life the property conveyed to them by the deeds, with remainder in fee to some child, children or descendants of a child or children of John D. Gillett. Where an instrument creates the power coupled with or in the nature of a trust to dispose of the property specified among the heirs, such power so given is considered a trust for the benefit of the parties so designated. In cases of this kind the power or trust should be construed according to the intention of the parties as gathered from the whole instrument, and where the trustee does not act before his death and could have distributed the property in such proportions as in his discretion he might decide, having failed before his death to distribute the property so left to him in trust, the court will put itself in the place of the trustee and will exercise the power by the most equitable rule, and distribution will be made *per capita* so that everybody within the rule will take equally as tenants in common. (*Wetmore* v. *Henry,* 259 Ill. 84, 85.) The contract specifically described the particular parcels of land constituting the subject matter of the contract and the manner in which, and the persons for whose benefit, the grantees were obligated to deal with the property. This is all that is necessary to raise a trust in a court of equity.