VIRGINIA OGLESBY, Indiv. and as Ex'r under the Will of Richard J. Oglesby III, Deceased, Counterplaintiff and Defendant and Third-Party Plaintiff-Appellant, v. SPRINGFIELD MARINE BANK, Trustee, Counter-defendant and Plaintiff (Emma Jean Counts *et al.*, Defendants and Counter-defendants; Carlotta Hutchinson, n/k/a Carlotta Tibbals, *et al.*, Defendants and Counterdefendants-Appellants; Richard J. Oglesby IV, Defendant and Counterdefendant; Emma Jean Oglesby Counts *et al.*, Defendants and Counterdefendants-Appellees; Peggy Counts Kent *et al.*, Defendants and Third-Party Defendants).

Fourth District   No. 4—92—1018

Argued June 16, 1993.—Opinion filed September 16, 1993.

Carl O. Hoffee (argued) and Bernard G. Segatto III, both of Barber, Segatto, Hoffee & Hines, of Springfield, for appellant Virginia Oglesby.

Robert A. Stuart, Jr. (argued), Emmet A. Fairfield, and Elizabeth W. Anderson, all of Brown, Hay & Stephens, of Springfield, for other appellants.

Donald R. Tracy and Steven C. Rahn (argued), both of Heyl, Royster, Voelker & Allen, of Springfield, for appellees.

Donald A. Behle, Warren Peters, and Stephen L. Miller, all of Lincoln, guardians *ad litem*.

JUSTICE KNECHT delivered the opinion of the court:

This is an action for construction of a testamentary trust created under the last will and testament of Emma Gillett Oglesby, deceased, dated January 27, 1924. The trust is due to terminate on February 1, 1998. Appellants argue the trial court erred in finding Emma Jean Oglesby Counts and James Edward Oglesby were "children of *** Jasper" within the meaning of the will and thus entitled to share in the distribution of the corpus of the trust created pursuant to item V. We disagree and affirm.

Testator Emma Gillett Oglesby had one child, Hiram Keays, from her marriage to her first husband. After her husband's death, she married Governor John Oglesby in 1873 and had four children: Felicite, Richard J., John Dean, and Jasper. Richard predeceased the tes-

tator and both John Dean and Felicite died leaving no descendants. Jasper married twice and produced offspring from both marriages but the validity of the second marriage is disputed by the parties. Jasper's first marriage in August 1912 to Maude Byrum produced two children, Richard J. (deceased 1983) and John Lewis (deceased 1972).

In 1920, Jasper left Maude and their marital home in Elkhart, Illinois, and participated in a marriage ceremony with Myrtle (Peggy) Nicholson in Crown Point, Indiana. There is no evidence of a divorce obtained from Maude Oglesby prior to the date of the Crown Point marriage. From then until Jasper's death in 1935 they lived openly as man and wife, first at the home of Peggy's parents and later in Cornland, Illinois, all within the same county, as testator and his first wife. Two children were born of that union: Emma Jean Oglesby Counts (born June 7, 1923), and James Edward Oglesby (born March 3, 1926).

In January 1924, Emma Gillett Oglesby executed her last will and testament consisting of 14 separate items, of which only the disposition of the item V property is at issue in this appeal. The testator died on November 25, 1928.

In January 1929, Maude Oglesby filed a complaint against Jasper for separate maintenance. The decree entered provided that Maude and Jasper were married in August 1912, that they were husband and wife, that Richard J. and John Lewis were born of that marriage, and that an order of support of $100 per month be entered. In July 1931, Jasper filed a petition for modification of the support and maintenance order, which was modified a year later when his payments were reduced to $75 per month.

In 1932, Jasper, Peggy, and their two children traveled to Mexico. Jasper filed a complaint for divorce against Maude. The Mexican divorce proceedings indicate Jasper stated he did not know Maude's whereabouts because she divided her time between Elkhart, Chicago and Springfield. Service was made by publication and by posting of the summons on the door to the Mexican courthouse. Jasper listed his address as Juarez, Mexico. The Mexican court entered a decree of divorce between Jasper and Maude on March 16, 1932, and approximately one month later Jasper and Peggy participated in a marriage ceremony in Mexico. At some time thereafter, Jasper, Peggy and the two children returned to Illinois, settling in Cornland. Jasper died in July 1935.

Following the death of Jasper's brother, John Dean Gillett Oglesby, in 1938, a variety of litigation was commenced regarding issues related to the will. (See *Oglesby v. Springfield Marine Bank* (1944), 385 Ill. 414, 52 N.E.2d 1000; *Oglesby v. Springfield Marine*

*Bank* (1946), 395 Ill. 37, 69 N.E.2d 269; *Oglesby v. Springfield Marine Bank* (1962), 25 Ill. 2d 280, 184 N.E.2d 874; *Oglesby v. Marine Bank* (1990), 205 Ill. App. 3d 1111 (unpublished order under Supreme Court Rule 23).) This case relates only to construction of the language of item V of the will of Emma Gillett Oglesby. The question is whether Emma Jean and James Edward (Jasper's children with Peggy) are entitled to share equally in the item V property with Richard J. and John Lewis (Jasper's children with Maude) and whether all are considered "children of *** Jasper" within the meaning of the will.

The trial court's memorandum opinion filed September 21, 1992, rejected the argument that the language "children of *** Jasper" was defined by the express references in other parts of the will to Richard J. and John Lewis and the absence of specific reference to Emma Jean and James Edward. The court found the language "children of *** Jasper" was used in contradistinction to those express references. The court then noted while the testator demonstrated a special affection for her grandsons Richard J. and John Lewis by restricting the disposition of item VIII property to them, she also demonstrated an intent to provide for potential grandchildren who might be born to any of her children. Provisions were made for potential children of John Dean (who was 46 years old and unmarried at the execution of the will) and for children of Felicite (who was then 49 years old and unmarried), even though it was unlikely either would ever have children. The court also noted the language of the item V devise to "children of *** Jasper" mirrored that used in item VI, each of which expressed an intent to provide for potential, unknown children of John, Felicite, and Jasper, and contrasted with the language reserving item VIII for Richard J. and John Lewis.

The court next reviewed the evidence as to whether Emma Jean and James Edward were "children of *** Jasper" within the meaning of the will. The court noted the two marriage ceremonies in which Jasper and Peggy participated in Crown Point, Indiana, in 1920, and in Juarez, Mexico, in 1932, as well as the two legal actions between Jasper and Maude—the 1929 separate maintenance action in Illinois and Jasper's subsequent action to modify support, and the divorce in Mexico in 1932. The court acknowledged the parties' dispute regarding the validity of the Mexican divorce but noted a presumption of validity attached to the divorce and later marriage in Mexico which no one had ever adjudicated as void.

The court also noted that Jasper and Peggy had lived openly in the same community as his first wife, holding themselves out as

husband and wife, and Maude never sought to have Jasper charged with bigamy or took any action to void the Mexican divorce. Jasper acknowledged both Emma Jean and James Edward as his children and their birth certificates list him as the father and their births as legitimate. Both Jasper's obituary and his death certificate listed Peggy as his widow. The court also made several findings with respect to the challenged legitimacy of Emma Jean and James Edward, noting such discussion was unnecessary in view of its determination both were found to be children of Jasper within the meaning of the will. The court concluded Emma Jean and James Edward were legitimate and entitled to share equally with Richard J. and John Lewis in the trust assets distributable under item V of the will.

Appellants herein are Virginia Oglesby, the third wife and widow of Richard J. Oglesby, and descendants of John Lewis Oglesby. Appellees are the descendants of Jasper Oglesby and Peggy Nicholson. Appellants challenge the trial court's construction of the will on two grounds. First, the language of the will shows the testator's intent to limit the item V devise to Richard J. and John Lewis and to exclude Emma Jean and James Edward. Second, under the law existing at the time of the will's execution, the term "children" was intended to include legitimate offspring only and did not include Emma Jean and James Edward.

■■ In construing a will, the testator's intent is to be determined from the entire document: the particular language selected, the relationships between its parts, and the overall plan for distribution. (*Whitmore v. Starks* (1959), 17 Ill. 2d 202, 206, 161 N.E.2d 254, 257; *Bradley v. Bradley* (1954), 3 Ill. 2d 58, 63, 119 N.E.2d 788, 791.) Where the language is such that the testator's intent is uncertain, the language may be read in light of the circumstances surrounding the testator when the will was made. *Whitmore*, 17 Ill. 2d at 206-07, 161 N.E.2d at 257.

Item V of the will provided a life estate for testator's son, John Dean Gillett Oglesby, in certain listed real estate. As relevant to this appeal, contingencies for the disposition of the item V property following that life estate were to take effect upon the termination of the trust established in item VIII. Item VIII created a spendthrift trust in certain listed real estate with the income paid to Jasper during his life and thereafter to Richard J. and John Lewis, testator's grandsons. Fifteen years following the death of the survivor of Jasper, Richard J. and John Lewis, the item VIII trust was to terminate and the proceeds paid to "the surviving children and

lineal descendants of any deceased child or children of Richard James Oglesby and John Lewis Oglesby." In contrast, item V provided if John Dean died without descendants and after the death of Felicite and termination of the item VIII trust: "I give and devise all of the property in this Item in this will described, share and share alike, to the child, children and descendants of child or children of Louise Felicite Oglesby and Jasper E. Oglesby surviving at the time John Dean Gillett Oglesby departs this life." A similar life estate in other property was provided for Felicite in item VI. Since Felicite exercised the power of appointment granted her pursuant to that provision, the disposition of the property encompassed by item VI is not disputed. However, the contingency language in item VI parallels the language in item V and contrasts with the specific devise to Richard J. and John Lewis expressed in item VIII.

■ Disposition of the corpus of item VIII property was expressly limited to Richard J. and John Lewis. Neither item V nor item VI was so restricted. The property in those latter items was reserved for unnamed or potential children of John Dean, Felicite, and Jasper. We cannot conclude the testator intended the provision for "children" in item V to apply only to potential children of Felicite but not to those of Jasper when both were mentioned in the same clause of the will. Neither can we conclude the testator intended to restrict the item V property to Richard J. and John Lewis as she had the item VIII property, for to do so would require a determination that selection of the language "children of *** Jasper" was an inadvertent drafting error.

Given the complexity of the 34-page document, the care in which it was drawn to control the disposition of testator's property for long periods following her death, and the numerous contingencies anticipated and resolved, we cannot conclude selection of the language "children of *** Jasper" was inadvertent. In the more than 50 times Richard J. and John Lewis are mentioned in the will, neither is ever identified as Jasper's child, a provision testator might have used had it been her intent to limit all devises to Jasper's children solely to Richard J. and John Lewis.

Appellants point out no provisions of the will expressly name Emma Jean or James Edward. At the time the will was executed, Emma Jean was an infant and James Edward had not yet been born. Failure of express designation does not support an intent to exclude. See *Morrison v. Tyler* (1914), 266 Ill. 308, 320-21, 107 N.E. 602, 606.

The evidence indicates the testator was aware Jasper moved out of the marital home he shared with Maude. She kept track of all the members of her family and knew what was going on. Jasper visited his mother weekly after his marriage to Peggy. It is not clear whether testator was aware of the birth of Emma Jean prior to the time she executed her will. In any event, she must have been aware of Jasper's domestic relationship with Peggy, if not the Crown Point marriage itself. With that knowledge the testator would also have known this union had the potential for producing additional grandchildren. Had she intended to disinherit these potential "children of *** Jasper," she could have done so in plain language or limited the devise to Richard J. and John Lewis. We note the testator used an exclusionary provision with respect to Hiram G. Keays, her son by her first marriage, because he had been devised a large estate under the wills of her father and brother.

We find appellants' view of the will—as expressing an intent to limit the item V devise to Richard J. and John Lewis—irreconcilable with its structure and the language chosen for devising her property. Emma Jean and James Edward are included within the devise to "children of *** Jasper" and they are entitled to take under item V of the will.

Since we have determined it was the testator's intent by purposeful selection of the language "children of *** Jasper" to devise the item V property to all of Jasper's children, including those from his marriage to Peggy, we decline to address appellants' argument that Emma Jean and James Edward are illegitimate offspring excluded under the law extant at the time of execution from taking under the will.

The judgment of the circuit court is affirmed.

Affirmed.

STEIGMANN, P.J., and LUND, J., concur.