ESTATE OF ROBERT E. WILLIAMSON, SR., Deceased, Petitioner-Appellant, v. JOSEPH H. WILLIAMSON, Adm'r of the Estate of Joseph Williamson, Legatee-Heir Under the Will of Robert E. Williamson, Sr., Respondent-Appellee.

First District (2nd Division)   No. 1—93—3401

Opinion filed August 29, 1995.—Rehearing denied November 9, 1995.—Modified opinion filed November 21, 1995.

Howard B. Brookins, Jr., P.C., & Associates, of Chicago (Howard B. Brookins, Jr., of counsel), for appellant.

Marcia L. Sabesin, of Chicago, for appellee Joseph H. Williamson.

Chuhak & Tecson, P.C., of Chicago (Barry A. Feinberg and James W. Naisbitt, of counsel), for *amicus curiae*.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

The sole issue in this case is whether the equitable doctrine of election applies to validate the devise of property which had been held by the testator and one of his children in joint tenancy and which the testator therefor had no right to devise. For reasons that follow, we hold that the equitable doctrine of election does not apply

to a devise of such property. We thus affirm the judgment of the circuit court.

The facts underlying this case are not in dispute. On February 19, 1991, Robert E. Williamson, Sr. (Robert), died. His last will and testament, dated August 20, 1986, was read aloud by his attorney on February 23, 1991, in the presence of, among others, Robert's six children, one of whom was Joseph Williamson (Joseph). The will provided in part as follows:

> "I give to those of my children, Quennetta Williamson Miller, Theodore B. Williamson, Robert E. Williamson, Jr., Clarence B. Williamson, and Claretta P. Williamson Comeaux, who survive me by thirty (30) days, as tenants in common and not joint tenants, my two-thirds (2/3) interest in the real estate located at 3536 through 3546 South Indiana Avenue, Chicago, Illinois, and any insurance policies thereon, free of any mortgage indebtedness, which I direct, shall be paid from the residue of my estate."

The real estate located at 3536 to 3546 South Indiana was originally held in joint tenancy by Robert; his wife, Annie V. Williamson, who died on January 8, 1983; and Joseph.

The will also provided that the residue of the estate be divided equally as tenants in common among his six children, including Joseph, who survived him by at least 30 days.

Claretta P. Williamson Comeaux was named executor of Robert's estate (the Estate), and the will was admitted to probate on March 13, 1991. On September 12, 1991, she tendered a check to Joseph for $18,552.69 as a partial distribution of the residue of the Estate, and he cashed the check shortly thereafter. On June 7, 1992, Joseph died and his son Joseph H. Williamson was named the independent administrator of the estate (Joseph's estate).

On February 23, 1993, the Estate filed a petition for a citation to recover assets, seeking an order from the circuit court requiring Joseph's estate to transfer two-thirds interest in the South Indiana Avenue property pursuant to the equitable doctrine of election. Joseph's estate responded that it was not required to produce the asset because a deceased joint tenant has no legal interest capable of devise or subject to intestate succession, and therefore the property could not be considered a part of the Estate. Thereafter, the Estate filed a motion for summary judgment and Joseph's estate moved to dismiss the petition.[1]

At the hearing on the motions, the Estate argued that because

---

[1]The circuit court subsequently granted leave to Consuelo Williamson, child of Joseph and grandchild of Robert, to file an appearance as an

Joseph never contested the will and because he accepted property devised to him under the residuary clause, the equitable doctrine of election prevented his estate from asserting that the property was incapable of devise. Although the Estate acknowledged that no Illinois court had ruled that the equitable doctrine of election applied to attempted dispositions of property held in joint tenancy, it argued that courts of several other States had found that it did. Joseph's estate argued, as it had in its response to the petition filed by the Estate, that no election occurred because the property was incapable of devise by Robert and, further, that any contrary conclusion would be inconsistent with the statutory right of survivorship in and to property held in joint tenancy. The court ruled that because the property held in joint tenancy became Joseph's by operation of law at the time of Robert's death, Robert held no interest in the real estate which was capable of devise. The court therefore denied the Estate's motion for summary judgment and granted Joseph's estate's motion, dismissing the petition.

On appeal, the Estate contends that the circuit court erred in denying its motion for summary judgment and in granting the motion to dismiss, asserting that the equitable doctrine of election is well established in Illinois and that no reason exists for its not applying to property held in joint tenancy.

■ The equitable doctrine of election, as applied to wills, "is not a creation of the common law, but was imported into equity from the civil law" (*Carper v. Crowl* (1894), 149 Ill. 465, 474-75, 36 N.E. 1040, 1042), and as such, "does not depend upon any statute but rests upon the ground that one who elects to take under a will and asserts a claim to property given by the will must recognize the equitable rights of all parties under the same will and thereby ratifies all the terms of the will" (*Palenske v. Palenske* (1917), 281 Ill. 574, 578, 118 N.E. 46, 47). The doctrine provides that "when the testator has made disposition of property not his own, and has given a benefit to the person to whom it belongs, the devisee or legatee accepting the benefit so given to him must make good the testator's attempted disposition." (*Carper*, 149 Ill. at 477, 36 N.E. at 1043.) Thus, in order for the doctrine of election to apply, the testator must (1) dispose of property not his own, and (2) make a valid gift to the owner of that property which is accepted by the legatee. *Carper*, 149 Ill. at 477, 36 N.E. at 1042; *Luepker v. Rieso* (1983), 119 Ill. App. 3d 62, 66, 456 N.E.2d 246, 248; see also S. Balbach, *Election Is Not Just For The Widow*, 65 Ill. B.J. 128 (1976) (hereinafter Balbach).

interested party and to join in the motion to dismiss.

In the instant case, Robert devised to five of his children two-thirds of the Indiana Avenue property, which at the time of Robert's death was held solely by Joseph as the last surviving joint tenant thereof. The Estate argues that because the last surviving joint tenant acquires sole ownership by operation of law upon the deaths of the other joint tenants (765 ILCS 1005/1 (West 1992); *Harms v. Sprague* (1984), 105 Ill. 2d 215, 224, 473 N.E.2d 930, 934), Robert disposed of property that he did not own. Elsewhere in the will, Robert named Joseph one of the beneficiaries of the residue of the estate; therefore, the argument continues, since Joseph made an appropriate election under the will, the equitable doctrine of election requires his estate to "make good [Robert's] attempted disposition."

■ An "[e]llection under a will consists in the exercise of a choice offered a devisee or legatee of either accepting its benefits and surrendering some claim, right or property which the will undertakes to dispose of, or of retaining his claim, right or property, and rejecting the provisions made for him by the will." (*Lloyd v. Treasurer* (1948), 401 Ill. 520, 525, 82 N.E.2d 470, 473.) The Estate contends that because Joseph accepted a benefit under the will by cashing the check from the Estate rather than rejecting the will, he made the requisite election. Thus, it concludes, this case provides a classic example of the operation of the equitable doctrine of election.

Joseph's estate argues, however, that the doctrine should not apply here because no Illinois court has ever ruled that it applies to property held in joint tenancy and that such a holding would be against the public policy of Illinois because it would allow a testator, contrary to statute, to abrogate the rights of a surviving joint tenant.

Thus presented with an issue for which there are no guideposts in Illinois law, we are confronted with the duty to undertake a measured assessment of the wisdom of extending the doctrine to property held in joint tenancy, for the wooden application of the rule without giving any thought to the unjust results it would perpetuate is simply to abandon our role in the orderly development of the law.

All of the authorities agree that the doctrine does not derive from either common law or statutory authority; as noted above, it "was imported into equity from the civil law" (*Carper*, 149 Ill. at 474-75, 36 N.E. at 1042; see also *Palenske*, 281 Ill. at 578, 118 N.E. at 47). We therefore deem it futile to await the legislature's acting to correct the inequities that would be certain to result from its application to property held in joint tenancy, as the Estate urges in the instant case, and which was the route taken by the Supreme Court of Wisconsin. See *Maki v. Frelk* (1968), 40 Ill. 2d 193, 203, 239 N.E.2d 445, 450 (Ward, J., dissenting) (noting that legislative inaction may

be a result of "its feeling that it is more appropriate \*\*\* for the judiciary to act"); *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 23-24, 421 N.E.2d 886, 896; and for the Wisconsin approach see *In re Will of Schaech* (1948), 252 Wis. 299, 31 N.W.2d 614.

Although several jurisdictions have upheld the continued application of the doctrine even when it serves to negate the right of survivorship in joint tenancies (*e.g., Estate of Kennedy* (1982), 135 Cal. App. 3d 676, 185 Cal. Rptr. 540; *In re Estate of Boldt* (Iowa 1983), 342 N.W.2d 463; *Thurlow v. Thurlow* (1944), 317 Mass. 126, 56 N.E.2d 902; see generally 60 A.L.R.2d 736 (1958)), this fact alone does not serve to release us from our obligation to undertake an independent examination of whether the doctrine serves any justifiable purpose when its application defeats the operation of the elements of the more ancient law of joint tenancy. (See 765 ILCS 1005/1b (West 1992) (codifying those elements in Illinois).) We are not authorized under our constitution to condone the abrogation of the legislature's codification of the common law relating to joint tenancy, by the judicial implementation of a doctrine imported into Anglo-American jurisprudence for no better reason than that so it was laid down at the time of the Caesars.

Our supreme court has stated:

> "We find no wisdom in abdicating to the legislature our essential function of re-evaluating common-law concepts in the light of present day realities. Nor do we find judicial sagacity in continually looking backward and parrotting the words and analyses of other courts so as to embalm for posterity the legal concepts of the past." (*Dini v. Naiditch* (1960), 20 Ill. 2d 406, 429, 170 N.E.2d 881, 892 (recognizing for the first time in Illinois a wife's right of action for loss of consortium).)

Similarly, when a doctrine emerging from outmoded rules of equity owes its origin to even more archaic codes and no longer serves the interest of justice, it is our duty to utilize the utmost caution in giving it even greater residence in our own jurisprudence. See N. Kahn, *Probate & Trust Questions*, 41 Ill. B.J. 158, 159 (1952) (hereinafter Kahn).

A brief examination of the historical roots of the equitable doctrine of election reveals no sustainable rationale for enlarging its application, particularly where the testator has not clearly expressed an intent to force an election to be made by the beneficiary whose property he devises to another. The doctrine is the dubious progeny of the Roman law under which a testator could dispose of property he did not own. (2 J. Pomeroy, Equity Jurisprudence § 463, at 333 (5th ed. 1941) (hereinafter Pomeroy); 2 W. James, Illinois Probate

Law & Practice § 43.92, at 187-88 (1951); see also *Carper*, 149 Ill. at 474-75, 36 N.E. at 1042.) The testator would appoint a person as heir or "universal successor to the testator." (Pomeroy § 463, at 333.) The heir acquired title to all of the testator's property and also became responsible for the testator's liabilities. If the testator devised property not his own to a third party, the heir was obligated, upon accepting the inheritance, to procure that property or, if that were not possible, to compensate the third person for its value. However, if the testator was unaware that the property did not belong to him, the legacy was void. (Pomeroy § 463, at 333-34.) The testator's intent to give property not his own had to be clear; the doctrine of election provided a means to effectuate this intent through the procurement of the property. If the heir or legatee elected against the will, he forfeited the gift. (N. Crago, *Mistakes in Wills and Election in Equity*, Law Q. Rev. 487, 492 (1990) (hereinafter Crago).) In contrast to the doctrine as it has evolved in English law, the Roman law did not apply the doctrine of election to cases in which the testator had been mistaken about his ownership of the devised property. Crago, at 492.

As English law developed, the equitable doctrine of election came to be applied even when the testator was mistaken regarding ownership of the devised property, and this is the situation in most modern cases. (J. Martin, Hanbury & Martin Modern Equity 839 (14th ed. 1993) (hereinafter Hanbury & Martin).) This rule has been sought to be justified under one of three theories: by inferring the testator's "real" intent from an implied condition of the terms of the will; by viewing the election as an objectively more equitable distribution of the testator's property; or by finding unconscionable an attempt by a beneficiary to both "approbate and reprobate the will." (Crago, at 498.) As several authors have observed, none of these justifications withstands close scrutiny. See Hanbury & Martin, at 839-40 (commenting that "[a] supportable basis for the doctrine in its developed form is *** hard to find"); Crago, at 505-06; Kahn, at 158.

The outdated notion that the doctrine aids in effectuating an implied intention of the testator is surely without basis in reality. As one commentator has observed, if the testator was mistaken about his ownership of the devised property, he would not have considered the conditions of equitable election and consequently could not have intended them. Crago, at 493.

A more modern justification of the doctrine is that it results in a natural equity. In the eighteenth and nineteenth centuries, application of the doctrine under principles of equity could facilitate the "more or less fair distribution of a testator's entire property where he sought by will to effect a variation within his family of interests

previously given *inter vivos*—usually by his marriage settlement." (Crago, at 499.) But today the doctrine of election does not necessarily result in an objectively more equitable distribution of the testator's property.

For example, in the case at bar, Robert Williamson, Sr., clearly intended that respondent share in the residue of his estate. But, if the doctrine is applied, respondent must sacrifice property he owns in order to keep the gift from the residue of the estate. Considering the provision in the will devising two-thirds interest in the Indiana Avenue realty, and absent evidence to the contrary, we can conclude only that Robert Williamson, Sr., was mistaken about the type and extent of his ownership of that property which passed to respondent upon his death. Application of the doctrine disregards this mistake with untoward results. (See Crago, at 502-03 (for other examples of the "anomalous operation of the doctrine").) As explained by Crago:

> "If a mistake is assumed, it necessarily follows that the testator could not have intended, by the mere fact of having purported to make dispositions to two beneficiaries, that there by [*sic*] any relationship of an accounting kind between them; the testator's intention was, on the contrary, simply to give one thing to one beneficiary and another thing to another beneficiary, and nothing more. The two intentions are separate and unrelated. By application of the doctrine, however, the court imposes an accounting relationship upon the beneficiaries by ignoring the fact that the mistake has been made. It ignores this fact on the theory that it is not permissible for a court to speculate upon what a testator might have done had the fact of the mistake been pointed out to him. But what is clear, *ex hypothesi*, is that the mistake relates only to one of the two relevant dispositions, not to both: assuming the mistake in the purported disposition to the preferred beneficiary, it is at least clear that the testator was not mistaken about his intention to confer a particular benefit on the electing beneficiary." (Crago, at 502.)

Ironically, the electing beneficiary ultimately has control over "the final form and extent of [the beneficiaries'] respective entitlements," regardless of what the testator's intent would be if he had been made aware of his mistake. (Crago, at 501.) In the case at bar, respondent by his election would determine how the property is distributed under his father's will.

Finally, although generally a beneficiary may not take under the will and, at the same time, attack its validity, in cases such as the one at bar, the beneficiary is not attacking the validity of the instrument as a whole, he is merely asserting that the testator could not

devise property he did not own. We are aware that in *Oglesby v. Springfield Marine Bank* (1946), 395 Ill. 37, 69 N.E.2d 269, the supreme court held that ignorance of the law regarding the doctrine of election will not relieve an electing beneficiary of its consequences. However, neither *Oglesby* nor any other Illinois court has considered the doctrine in the context of property held in joint tenancy. (But see Balbach, at 131; J. Mann, *Some Current Problems Involving Joint Tenancies*, 40 Ill. B.J. 370 (1952) (both warning that the doctrine of election could potentially apply when the testator attempts to dispose of property held in joint tenancy).)[2] Application of the doctrine when the testator is unaware of the element of survivorship relating to the holding of property in joint tenancy honors the deceased tenant's ignorance of the law over the survivor's ignorance of the doctrine of election. We agree with the cogent observation that "[i]t is difficult to comprehend any doctrine as being equitable which might result in a testator depriving another person of his own property without the latter at least first being consulted as to his wishes." Kahn, at 158.

The wise course, in our view, would be to limit application of the doctrine to those circumstances where it prevents injustice or where the testator, in express language, has communicated an intent to put the beneficiary to an election. It is axiomatic that, when construing a will, the court's primary duty is to effectuate the intent of the testator. That intent is most clearly evidenced by the language of the will. (*Coussee v. Estate of Efston* (1994), 262 Ill. App. 3d 419, 423, 633 N.E.2d 815, 818, *appeal denied* (1994), 157 Ill. 2d 497, 642 N.E.2d 1275; see also *Oglesby v. Springfield Marine Bank* (1993), 250 Ill. App. 3d 1038, 1042, 620 N.E.2d 594, 596, *appeal denied* (1994), 154 Ill. 2d 561, 631 N.E.2d 710.) However, when a provision of a will violates the law or public policy, the court will declare the devise void. (*In re Estate of Gerbing* (1975), 61 Ill. 2d 503, 507-08, 337 N.E.2d 29, 32-33 (devise conditioned upon the beneficiary's divorce was against public policy and, therefore, would not be given effect); *Schuknecht v. Schultz* (1904), 212 Ill. 43, 48-49, 72 N.E. 37, 39 (provisions in will violating the rule against perpetuities were illegal and, therefore, void).) Furthermore, courts, under certain circumstances, will reform a will when the testator has clearly made a mistake. See *Patch v.*

---

[2]The question of whether the doctrine of election applied to property held in joint tenancy was raised by the appellant, but not reached by the appellate court in *Luepker v. Rieso* (1983), 119 Ill. App. 3d 62, 456 N.E.2d 246. In *Luepker*, we held that the "plaintiff's arguments relative to election *** must be rejected" (119 Ill. App. 3d at 67-68), finding that election was inapplicable where the beneficiary received no benefit under his wife's will which he would not have been entitled to even absent the will.

*White* (1886), 117 U.S. 210, 29 L. Ed. 860, 6 S. Ct. 617 (where evidence showed that the testator mistakenly devised lot which he did not own by transposing two numbers in describing the property, the Court would deem the will to devise the lot the testator did own and not the lot designated in the misdescription); see generally J. Langbein & L. Waggoner, *Reformation of Wills on the Ground of Mistake: Change of Direction in American Law?*, 130 U. Pa. L. Rev. 521 (1982).

Likewise, in the instant case, we should not hesitate to acknowledge that the testator mistakenly disposed of property which had passed to another by operation of law and to declare the devise of that property void. To prevent the anomalous results of the application of the doctrine, we should follow those jurisdictions which hold that the equitable doctrine of election applies when the testator has expressly put the heir or legatee to an election. See *Lambeth v. Fowler* (1977), 33 N.C. App. 596, 235 S.E.2d 914; *In re Estate of Grieco* (1968), 431 Pa. 108, 244 A.2d 27; see also *Cranston v. Winters* (N.D. 1976), 238 N.W.2d 647.

As noted above, the doctrine of election should be applied when justice demands. Resort to the doctrine is surely justified when the beneficiary of a will who takes thereunder attacks the validity of the document on the ground that the testator's signature was forged, or that it does not conform to the requirements of the statute of wills, or that the testator was not of sound mind, or that he was subject to undue influence, for in such cases it would clearly defy reason to permit one to accept the benefits conferred by the will and yet contest the right of its proponents to have it probated at all. (See *In re Estate of Joffe* (1986), 143 Ill. App. 3d 438, 493 N.E.2d 70 (holding that legatees could not retain benefits from estate while challenging the validity of the will); see also *Kyker v. Kyker* (1983), 117 Ill. App. 3d 547, 453 N.E.2d 108.) However, the doctrine ought to be limited to such circumstances. As it stands now, "equitable election is a principle which the attorney can use to haunt or delight prospective beneficiaries." (Balbach, at 128.) Yet another commentator, in analyzing *Oglesby*, has observed that "[i]n essence, compelling a proposed beneficiary under a will to elect whether he will keep his own property and reject the gift offered him under a will, or abide by the will and give up his own property for other property, is an attempted coercive exchange of property." Kahn, at 158.

To add to the rigors of the doctrine its extension to cases that prevent the element of survivorship to operate, as it does by law, and to yield instead to the testator's unawareness that holding property in joint tenancy prevents its devise would be to ignore a law enacted by our legislature in order to perpetuate an archaic doctrine of equity.

Such action would not only lack reason, it would disregard our limited role as a court.

■ Consequently, for all of the foregoing reasons, we hold that the equitable doctrine of election is inapplicable to property held in joint tenancy where the testator does not clearly indicate that he intends to put the beneficiary to an election, for to hold otherwise would be to carry the doctrine beyond its last frontier. Under those circumstances, we can be certain that the testator is not mistaken as to his rights to certain property he purports to devise. In the instant case, the testator did not indicate his intent to force an election. We therefore affirm the judgment of the trial court.

Affirmed.

HARTMAN and DiVITO, JJ., concur.