CHICAGO TITLE AND TRUST COMPANY, as Trustee under the Will of Robert Sonnenschein, Deceased, Plaintiff-Appellee, v. HUGO R. STEINITZ *et al.*, Defendants-Appellants (Ralph R. Sonnenschein *et al.*, Defendants-Appellees).—HUGO R. STEINITZ *et al.*, Counterplaintiffs and Defendants-Appellants, v. CHICAGO TITLE AND TRUST COMPANY, as Trustee under the Will of Robert Sonnenschein, Deceased, Counterdefendants and Plaintiffs-Appellees (Ralph R. Sonnenschein *et al.*, Counterdefendants and Defendants-Appellees).

First District (6th Division)   Nos. 1—96—2234, 1—96—3273 cons.

Opinion filed May 30, 1997.

Morton John Barnard, R. Dickey Hamilton, Geraldine Soat Brown, and David A. O'Toole, all of Miller, Shakman, Hamilton, Kurtzon & Schlifke, of Chicago, for appellants.

Richard A. Siebel, of Siebel, Whipple & Schofield, of Chicago, for appellees.

PRESIDING JUSTICE GREIMAN delivered the opinion of the court:

Robert Sonnenschein (Robert) executed a will (the will) dated December 3, 1937, and died on November 8, 1939. Robert was survived by his wife Flora and three children: Jeanne Anne Sonnenschein (Jeanne), Carl Sonnenschein (Carl), and Ralph Sonnenschein (Ralph). The will bequeathed certain personal property to Flora and the remainder of his estate in trust designating Flora and Chicago Title and Trust Company as trustees. The net income from the trust was to be paid to Flora during her lifetime. Upon Flora's death, the will provided as follows in the sixth paragraph:

"Upon the date of the death of my wife, FLORA K. SONNEN-SCHEIN, *** I direct my Trustees to divide the trust estate, both as to principal and accrued but undistributed income, into three separate trust funds, one of said three separate trust funds to consist of 40% of said trust estate and to be held for the use and benefit of my daughter, JEANNE ANNA SONNENSCHEIN, and the

other two of said three separate trust funds to consist of 30% each of said trust estate and to be held one each for the use and benefit of my two sons, CARL LEO SONNENSCHEIN and RALPH ROBERT SONNENSCHEIN, respectively.

My Trustees shall pay over and distribute to each of my said three children, respectively, quarterly or oftener in the discretion of my said Trustees, all of the net income derived from the respective separate trust funds held for the use and benefit of each of my said three children, respectively, during each and every year ensuing subsequent thereto and prior to the dates of the deaths of my said three children, respectively."

Flora Sonnenschein died on January 15, 1976, survived by all three children (Jeanne, Ralph and Carl). Pursuant to the will, Chicago Title and Trust then acted as sole trustee and paid the net income from the trust to the three children in their respective portions as designated in the will.

Jeanne married, took the name Steinitz, and adopted two sons, Hugo and Paul (the Steinitz defendants). Carl had two children (Robert Sonnenschein and Barbara Sonnenschein). Ralph had three children (David C. Sonnenschein, Lisa Branch and Ann Feiner).

Upon the death of any of the three children, the sixth paragraph of the will further provided as follows:

"Upon the dates of the deaths of my said three children, respectively *** my Trustees shall pay over and distribute the separate trust fund of such of my said three children so dying (or so having died), as to both principal and accrued but undistributed income, unto the then surviving lawful issue of such of my said three children, respectively, per stirpes and not per capita. In the event that any of my said three children so dying *** shall leave no lawful issue surviving at that time, the separate trust fund of such of my said three children so dying *** shall be divided between the separate trust funds of the other two of my said three children in the same proportions as is hereinabove provided with respect to the creation of the original separate trust funds, and shall be held, used, paid over and distributed in the same manner and at the same times and to the same persons as is herein provided with respect to said other two separate trust funds."

Jeanne died on August 16, 1978. At that time, the trustee correctly determined that the two adopted sons of Jeanne, Hugo and Paul, were not "lawful issue" of Jeanne under then-existing Illinois law and thus not beneficiaries of Jeanne's trust. The trustee then divided Jeanne's 40% share of the trust fund into two equal parts and allocated one part to Carl and one part to Ralph. No principal distributions have ever been made to Robert's children. On June 20,

1995, the aggregate value of the assets held under the will was approximately $541,000.

In 1989, the General Assembly amended the Probate Act of 1975 (755 ILCS 5/1—1 *et seq.* (West 1992)) to treat adopted children the same as natural children in instruments executed before September 1, 1955. The legislature added subsections 2—4(f) and 2—4(g), which provide in pertinent part as follows:

"(f) After September 30, 1989, a child adopted at any time before or after that date is deemed a child born to the adopting parent for the purpose of determining the property rights of any person under any instrument executed *before* September 1, 1955, unless one or more of the following conditions applies:

(1) The intent to exclude such child is demonstrated by the terms of the instrument by clear and convincing evidence." 755 ILCS 5/2—4(f) (West 1992).

"(g) No fiduciary or other person shall be liable to any other person for any action taken or benefit received prior to October 1, 1989, under any instrument executed before September 1, 1955, that was based on a good faith interpretation of Illinois law regarding the right of adopted children to take property under such an instrument." (Emphasis added.) 755 ILCS 5/2—4(g) (West 1994).

Prior to the 1989 amendments, the statutory presumption that a testator intended for adopted children to be treated as natural offspring applied only to the construction of written instruments executed *on or after* September 1, 1955. Ill. Rev. Stat. 1987, ch. 110$^1$/$_2$, par. 2—4(e).

In 1994, after the amendments to the Probate Act, Hugo and Paul indicated to the trustee that they should be beneficiaries of their mother's share of the trust. On the other hand, Carl, Ralph and their children opposed the claim of Hugo and Paul, contending that they were not proper beneficiaries entitled to receive Jeanne's share of the trust upon her death; that subsequent changes in Illinois law have not entitled them to the reestablishment of the terminated share; and that the trustee should continue to administer such share as part of the separate trust funds for the benefit of Carl and Ralph.

In light of the competing interests involved, the trustee filed a complaint to construe the trust and for a declaratory judgment to resolve the dispute between the Steinitz defendants and Ralph Sonnenschein, Ralph's children (David C. Sonnenschein, Lisa Branch and Ann Feiner), Carl L. Sonnenschein, and Carl's children (Robert Sonnenschein and Barbara Sonnenschein) (hereinafter collectively referred to as the Sonnenschein defendants).

The Steinitz defendants filed an amended countercomplaint, ask-

ing that the court declare them to be entitled to Jeanne's entire 40% share in the trust and all income therefrom from the date of Jeanne's death, as her surviving lawful issue. The Steinitz defendants filed a motion for judgment on the pleadings pursuant to section 2—615(e) of the Code of Civil Procedure (735 ILCS 5/2—615(e) (West 1994)). The Sonnenschein defendants filed a response. On March 27, 1996, a hearing was held on the motion for judgment on the pleadings filed by the Steinitz defendants.

On April 10, 1996, the trial court issued a memorandum of opinion, finding that (1) the parties agreed that the Steinitz defendants were among those meant to be affected by the enactment of section 2—4(f) of the Probate Act; (2) the will created three separate trust funds, one for each of the three children (Jeanne, Carl, and Ralph); (3) Jeanne's trust fund terminated after she died and her share was distributed to the trusts held for the benefit of Carl and Ralph; and (4) the Steinitz defendants cannot take from Jeanne's trust fund, which previously terminated, and cannot recover from Carl and Ralph the benefits they received at the time of Jeanne's death pursuant to the will.

On April 11, 1996, the trial court issued a corrected memorandum of opinion. The only change made from the April 10 memorandum of opinion was the addition of two sentences denying the Steinitz defendants' motion for judgment on the pleadings and granting the Sonnenschein defendants judgment on the pleadings. Thereafter, following a hearing on June 7, 1996, the trial court denied the Steinitz defendants' motion for rehearing and modification or vacation of judgment.

On June 19, 1996, the Steinitz defendants filed a timely notice of appeal from the three orders (April 10, April 11, and June 7). That appeal was given the number 1—96—2234. After other procedural matters, on September 9, 1996, the Steinitz defendants filed a notice of appeal from the same orders (April 10, April 11 and June 7). That appeal was given the number 1—96—3273. On October 22, 1996, this court consolidated the two appeals.

On appeal, the Steinitz defendants raise the following issues: (1) whether the trial court erred in interpreting the will; (2) whether section 2—4(g) of the Probate Act (755 ILCS 5/2—4 (West 1994)) prevents the Steinitz defendants from recovering benefits; and (3) whether the trial court erred in granting judgment on the pleadings to codefendants, as a matter of law. In particular, the Steinitz defendants contest the trial court's findings that the will established three separate trusts and that the trust under which the Steinitz defendants seek to take was terminated. We agree with the trial court's findings and affirm the trial court's orders.

The Steinitz defendants assert that the trial court incorrectly interpreted the will. The Steinitz defendants argue that (1) the will created one trust, not three separate trusts; and (2) Jeanne's share of the trust has not terminated because no distribution of Jeanne's trust fund has been made and the trust fund still exists. We disagree.

■ In construing a will, the court's primary concern is to find the testator's intent and, provided that the intention is not against public policy, to give it effect. *Harris Trust & Savings Bank v. Beach*, 118 Ill. 2d 1, 3 (1987); *Estate of Williamson v. Williamson*, 275 Ill. App. 3d 999, 1007 (1995); *In re Estate of Beck*, 272 Ill. App. 3d 31, 34-35 (1995). The testator's intent is most clearly evidenced by the language of the will. *Williamson*, 275 Ill. App. 3d at 1007. " '[T]he court must consider the plain and ordinary meaning of the words used [citations], and the intent must be ascertained by considering the entire document.' " *In re Estate of Beck*, 272 Ill. App. 3d at 35, quoting *First National Bank v. Canton Council of Campfire Girls, Inc.*, 85 Ill. 2d 507, 514 (1981).

The plain, unambiguous language of the will states that three separate trust funds were to be created for the three children, and the will refers to these separate trust funds on numerous occasions, including nine such references in the sixth paragraph alone. The sixth paragraph of the will provides that upon the death of Flora, the trustees are "to divide the trust estate *** into three separate trust funds" designated to the three children (Jeanne, Carl and Ralph). Upon the death of any of the three children, the trustees "shall pay over and distribute the separate trust fund of such of my said three children so dying *** to the then surviving lawful issue of such of my said three children." If no lawful issue survive, then "the separate trust fund *** shall be divided between the separate trust funds of the other two of my said three children."

Additionally, the ninth paragraph of the will provides:

"In making division of the trust estate into shares under the provisions hereinabove contained, the Trustees may assign undivided interests in any assets of the trust estate to the several shares and may make joint investments of funds in said shares, and so long as the same can advantageously be done, may hold the several shares as a common fund and divide the net income therefrom among the several shares proportionately."

While this provision allows the trustee the right or opportunity to invest the *res* of each trust jointly or hold interests undivided among the separate trusts, it seems clear that the testator's intention is that the trusts remain separate and that the trustees are merely afforded a degree of convenience "so long as the same can advantageously be done."

■ The Steinitz defendants argue that the phrase "separate trust funds" is not the same as "separate trusts." However, they did begrudgingly concede at oral argument that the sixth paragraph of the will also restricts the trustee from invading the *corpus* of one beneficiary's trust for the benefit of another beneficiary. Again, we are provided with evidence of the testator's intention to create three separate trusts for the objects of his bounty.

We reject the Steinitz defendants' argument that the phrase "separate trust funds" is not the same as "separate trusts." In *First National Bank v. King*, 263 Ill. App. 3d 813, 815 (1994), *aff'd*, 165 Ill. 2d 533 (1995), this court examined a will that "left the substantial bulk of the testator's estate in trust, to be divided into three equal funds." This court considered "each of the three funds *** as a separate and distinct fund." *King*, 263 Ill. App. 3d at 816.

As in *King*, the plain and unambiguous language in the will we are considering established that Robert intended and created three separate trusts, one trust for each of his three children. The will repeatedly uses the phrase *"three separate* trust funds." (Emphasis added.) The plain language of the will, the intent of the will in its entirety, and the *King* case support the finding of three, not one, trusts.

Second, the Steinitz defendants assert that Jeanne's trust fund has not terminated and argue that no distribution of Jeanne's trust fund has been made because the principal still exists. The Steinitz defendants urge that the bookkeeping entry made by the trustee upon Jeanne's death did not terminate Jeanne's trust. We find this argument also unpersuasive.

The will provides that, upon the death of one of the three children (Jeanne, Carl or Ralph), the trustee "shall *pay over and distribute* the separate trust fund of such [deceased child] *** unto the then surviving lawful issue of [the deceased child]." (Emphasis added.) Absent any lawful issue, "the separate trust fund of [the deceased child] *** shall be *divided* between the separate trust funds of the other two [surviving children]." (Emphasis added.)

In its complaint, the trustee stated that, in 1979, after Jeanne died, it *"divided* Jeanne's 40% separate trust fund upon its termination into two equal parts and *allocated* one such part to each separate trust fund already being held for each of Carl's and Ralph's benefit under the Will." (Emphasis added.) The division and allocation of Jeanne's trust was made by a bookkeeping entry on the part of the trustee.

■ A trust can terminate under several circumstances, including revocation or modification by the settlor, expiration of the period for which the trust was created, or conveyance by the trustee to or at

the direction of the beneficiary or by other terms of the instrument. Restatement (Second) of Trusts §§ 330 through 343 (1959). When a trust terminates, a trustee must perform the acts necessary to wind up the trust. "When the time for the termination of the trust has arrived, the trustee has such powers and duties as are appropriate for the winding up of the trust." Restatement (Second) of Trusts § 344 (1959). See also 4 A. Scott & W. Fratcher, Scott on Trusts § 344, at 542-47 (4th ed. 1989) (powers and duties of trustee in termination of trust); G. Bogert & G. Bogert, Trusts & Trustees § 1010, at 448-67 (2d rev. ed. 1983) (powers and duties of trustee on termination of trust).

■ The Restatement (Second) of Trusts further explains as follows:

> "By 'the time for the termination of the trust' is meant the time at which it becomes the duty of the trustee to wind up the trust. Ordinarily, this time is at the expiration of the period for which the trust is created." Restatement (Second) of Trusts § 344, Comment *a*, at 191 (1959).

■ The time for the termination of Jeanne's trust arrived at the time Jeanne died. Absent lawful issue, the transfer of Jeanne's trust to Carl and Ralph, albeit by a bookkeeping entry, terminated Jeanne's trust. Any banking transaction in the modern world is typically accomplished via computer entries. If "bookkeeping entries" were not given validity, then it would be axiomatic that computer entries would not be valid. Similarly any electronic, telephonic, automatic teller machine, and facsimile transactions would equally be of no effect. We find that, in accordance with the terms of the will and then-existing Illinois law, the trustee divided, and thereby terminated, Jeanne's trust to Carl and Ralph.

Moreover, we find that the Steinitz defendants' reliance on *First National Bank v. King*, 165 Ill. 2d 533 (1995), is misplaced. The trust at issue in *King* had not terminated because there were several beneficiaries enjoying the bounty of the trust after the death of the primary beneficiary. *King*, 165 Ill. 2d at 536. Upon the death of their mother, the trust income was distributed to the natural children and, thereafter, grandchild pursuant to then-existing Illinois law. The adopted child's subsequent claim under the 1989 amendments to the Probate Act, therefore, was viable because the trust had continued for the natural progenies' benefit. In contrast, in the instant case, Jeanne died leaving no lawful, nonadopted issue and her trust terminated when it was distributed to Carl and Ralph.

In light of our decision that the will created three separate trusts and that Jeanne's trust terminated with the distribution to Carl and Ralph, we need not address the Steinitz defendants' assertion that

section 2—4(g) of the Probate Act does not prohibit surcharging Carl's and Ralph's shares.

■ Lastly, the Steinitz defendants assert that the trial court erred in granting judgment on the pleadings to the Sonnenschein defendants because the Sonnenschein defendants had not moved for judgment and a relevant factual question existed from the pleadings, *i.e.*, whether the trustee's division of Jeanne's 40% share of the trust fund constituted the desinence of Jeanne's trust.

Our review of an appeal from a motion for judgment on the pleadings is *de novo. E.g., J&B Steel Contractors, Inc. v. C. Iber & Sons, Inc.*, 162 Ill. 2d 265, 269 (1994); *Friedman v. Krupp Corp.*, 282 Ill. App. 3d 436, 440 (1996). On review, we must determine whether any genuine issue of material fact exists and, if not, whether the prevailing party was entitled to judgment as a matter of law. *Millers Mutual Insurance Ass'n v. Graham Oil Co.*, 282 Ill. App. 3d 129, 134 (1996); see also *Grzeszczak v. Illinois Farmers Insurance Co.*, 168 Ill. 2d 216, 223 (1995). "Judgment on the pleadings is proper only if questions of law, and not of fact, exist after the pleadings have been filed." *Millers Mutual*, 282 Ill. App. 3d at 134. If no issue of material fact is presented by the pleadings, "the question is which party is entitled to judgment." *Pioneer Bank & Trust Co. v. Austin Bank*, 279 Ill. App. 3d 9, 13 (1996).

The dispute in the present case was initiated by the trustee when it filed a complaint for trust construction and declaratory judgment. Subsequent filings included countercomplaints by the Steinitz defendants, a motion for judgment on the pleadings by the Steinitz defendants, and respective responses by the Sonnenschein defendants. We find that the pleadings did not reveal any genuine issues of material fact. Therefore, the trial court did not err in resolving the questions of law presented in this matter and granting judgment to the Sonnenschein defendants.

Affirmed.

THEIS and QUINN, JJ., concur.